### MARSHALL, WESCOAT & CO. v. CRAWFORD.

1. CHATTEL MORTGAGE—FRAUD—EVIDENCE.—A stipulation in a chattel mortgage, that the mortgagor should retain possession of the stock of goods, and sell the same in his business as merchant until the said debt is paid or this mortgage is foreclosed, all goods bought to take place of goods sold, is not of itself evidence of fraudulent intent. *Porter* v. *Stricker,* 44 S. C., 183, *approved.*

2. MORTGAGE—FRAUD—BURDEN OF PROOF.—One who alleges *fraud* in the execution of a .mortgage, which is *not* shown to cover all of mortgagor's property, has the burden of proving the same.

3. IBID.—IBID.—If any corrupt agreement existed between mortgagor and mortgagee not to record a mortgage within the forty days, it would be annulled as fraudulent.

4. CHARGE.—A Circuit Judge is not bound to charge a request in the exact words given; it is sufficient if he gives the substance.

5. NEW TRIAL.—The action of the Circuit Judge in overruling motion for new trial approved.

Before ALDRICH, J., York, November, 1894.   Affirmed.

Action by Marshall, Wescoat & Co. against Edward A. Crawford, sheriff of York County, for possession of stock of goods.

The following is the charge of the Circuit Judge:

The pleadings in this case present the issues which you are called to pass upon.   Those pleadings have been read in your presence and to you, and I shall not undertake to reiterate or to read those pleadings to you a second or third time, but will briefly summarize the substantial or material allegations in the complaint and the allegations contained in the answer.   Therefore, briefly stated, this action is a

special proceeding, brought under the provisions of the law of this State which regulates actions for a claim and delivery of personal property. The property the subject matter of this action is alleged to be the stock of mercantile goods described in the complaint owned by a Mr. Gelzer. The plaintiffs contend and allege that they are entitled to the possession of those goods by reason of the rights conveyed to them by Mr. Gelzer in certain notes and mortgages. Those mortgages are what you term chattel mortgages— that is, liens upon personal property, in this case alleged to be the stock of goods to which I have alluded. It is the law of this State that the owner of chattels may give a mortgage upon them to secure his indebtedness, and if such mortgages are drawn properly, so as to be sufficient and in compliance with the law, it vests in the mortgagee the rights it purports to convey, viz: that it is a security for the debt therein described; and the law is, that upon the maturity of the debt—that is, upon the expiration of the credit given by the mortgagee to the mortgagor—that the condition, as it is so frequently termed, is broken, and the mortgagee then has the right to peaceably and legally take into his possession those goods and chattels, and sell them, either in the manner provided by the statute for the sale of chattels under such circumstances or in the manner specifically stipulated in the mortgage. Upon condition broken, if the mortgagor refuses to give up possession of those chattels covered by the mortgage, or those chattels are in the custody of any outside party, and such party refuses to render or to deliver the possession thereof to the mortgagee, then the mortgagee, the owner of the mortgage, has a right to bring his action of claim and delivery in the Court for the recovery of the possession of those chattels; and if he establishes that his mortgage is a valid and sufficient mortgage and the first lien, or that he is entitled to the possession of those goods under that mortgage, then the courts award the possession to him and will put him in possession of the goods. To apply that doctrine. It is alleged here that Mr.

Gelzer was the owner of this stock of goods, and that he gave first a mortgage to one J. J. Wescoat, trustee, for the amount therein specified; the second is to the Savings Bank of Rock Hill, and the third is also given by John Gelzer to the Savings Bank of Rock Hill, S. C. All these mortgages, it is alleged, have been assigned to and now are the property of Marshall, Wescoat & Co., the plaintiffs in this action. And perhaps, before going to the other questions, it may be better for me to take up these mortgages and explain them to you, as it is made the duty of the Court to construe the meaning of all written instruments, and instruct the jury as to their force and effect. All three of these mortgages, broadly speaking, are drawn in compliance, and executed in compliance, with law, and upon their face appear to be regular and correct. The first mortgage, viz: that to J. J. Wescoat, trustee, is given to secure a debt of $700, forty days after date, to wit: August 17th, 1892, due by John Gelzer to J. J. Wescoat, trustee. That mortgage, as I stated, and the note it was given to secure, are, upon their faces, apparently regular. The second mortgage—and that is she one that I wish to call your attention to, because it is incumbent upon me to construe this note and this mortgage with reference to certain questions that have been mooted and argued in your presence—the first mortgage is dated the 21st of January, 1893, and is given to secure a note, which reads as follows: "Rock Hill, S. C., January 21st, 1893. One day after date, I promise to pay to the order of the Savings Bank of Rock Hill, S. C., the sum of $2,000, with interest from date at the rate of eight per cent. per annum, payable annually, until the whole be paid, negotiable and payable at the Savings Bank of Rock Hill, S. C.; and in case it shall become necessary to collect the said sum and interest, or any part thereof, by action at law, then I agree to pay the additional sum of ten per cent. on the amount due for attorney's fees. Value received. Signed, John Gelzer." And the mortgage refers to that note, and purports to be given to secure it. That note is dated January 21st, 1893,

and payable one day after date; and the point to which I wish to direct your attention just now is this: If this is an agreement to pay money rising out of the transactions out of which the money, or money's worth, is derived, and the note is the evidence of the existence of that debt, the note does not merely, because it is a written note, make the debt; it is evidence of that which is already in existence, because it is said to be given for value received, and the note be renewed; and if it is renewed, in law, the meaning of it is, that the debt is continued and the promise to pay is renewed; and it is a question of fact, when, as in this case, a check is presented to the bank by Gelzer, and afterwards notes are taken, then, upon its face, the check is an order to pay money in there.  A note upon its face is a promise to pay a debt, but if it is intended as a renewal of an old debt, and the jury are satisfied that it is a renewal of an old debt, it is merely evidence of the continuance of the former debt, and under this mortgage, this chattel mortgage that I hold in my hand, to wit: of January, 1893, the mortgage would secure and protect the renewal of a note.  But, in passing just now, this paper upon its face purports to be, this note, for $2,000, and this mortgage of January, 1893, is given to secure it, and if the defendant here, either from constructive notice, such as by recording, or actual notice, had obtained information or notice of the existence of these papers, it would only serve as a security to the bank to the amount of $2,000, and the interest fixed in it; it couldn't go above that amount, because it says so upon its face.

The third mortgage, dated the 2d of December, 1893, purports to be given as security to insure the payment of $3,100, which, in his mortgage, Mr. Gelzer recites: "I have given my promissory notes as follows," and enumerates several notes in the aggregate amounting to $3,100, and the notes to which the mortgage refers are alleged to be the notes that are in evidence before you.  If on that date, the 2d day of December, 1893, Mr. Gelzer owed the savings bank $3,100, he had a perfect right, Mr. Gelzer did, to give, if he

did it honestly and *bona fide*, the security to secure that
$3,100; and it would make no difference whether he had
other security, either direct or collateral, to secure that debt
or a part of the debt; whether he had that security for the
sum of $3,100, or only for $2,000, he would have the right
to give the mortgage and the savings bank would have the
right to take it as additional security or as further security,
because I know of no law which limits the amount of secu-
rity which one may give to another.    That is a matter for
their own individual agreement, which the law does not
purport to regulate.    Now we go a step further.    Under
our law, the mortgage as between the mortgagee and the
mortgagor, the parties to it who have notice, the execution
and delivery thereof makes it binding and valid upon them,
the mortgagor and the mortgagee; but as to subsequent cre-
ditors and subsequent purchasers for value, the law says
that in order that subsequent creditors and purchasers shall
have some notice of these liens, that the mortgagee shall
record his mortgage within forty days, and if he neglects to
record his mortgage in forty days, the recording of such,
under the law, constitutes constructive notice to all subse-
quent purchasers and creditors, because they are bound by
the law of the land, and it is incumbent upon a man dealing
with another—or it is his privilege, at least—to search the
records and see whether the property, upon the faith of
which, and concerning which, he is dealing, is unencum-
bered; and, therefore, recording a paper is constructive notice
to subsequent purchasers, if recorded according to law—
that is, within forty days, and in the place the statute pro-
vides in regard to chattel mortgages—that is, that they must
be recorded within forty days, and if the mortgagor is re-
siding in the State, it must be recorded in the office of the
register of mesne conveyances of that county in which the
mortgagor resided at the date of its execution or delivery, and
if he is not in this State, then it must be recorded where
the property is situated.    Now, in regard to Mr. Wescoat's
mortgage, the first in the line of mortgages, and as requested

by defendants in their tenth request to charge: "In order that a mortgage of personal property may avail against the claims of subsequent creditors without notice, the mortgage must be recorded in the office of the register of mesne conveyances of the county in which the mortgage debtor resided when the mortgage was executed." That I charge you, with the statement that it is in exact conformity with the statute, in the county in which the debtor resided when it was executed or delivered.

The second mortgage, that of January, 1893, for $2,000, which I have already referred to and endeavored to explain to you, was recorded in the office of the register of mesne conveyances for the county of York, on January 5th, 1894. It was dated in January, 1893, and, therefore, it was not recorded within the time, the forty days provided by the law. Now, as to the question of whether Mr. Gelzer, at that time, in January, 1893, and in December, 1893, was a resident of York County or not, I cannot express an opinion. That is a question of fact. The mortgage of 1892 recites on its face, that at the time that mortgage was executed and delivered, he was a resident of the county of Charleston. The mortgage of January, 1893, recites: "Whereas, I, John Gelzer, of the county and State aforesaid," that is, the State aforesaid and York County, as recited above in that mortgage; and I believe the third mortgage recites that he was a resident of the county of York. If he resided here, then York County was the proper place to record that mortgage. The third mortgage, John Gelzer to the Savings Bank of Rock Hill, S. C., dated December 2d, 1893, was recorded the 5th day of January, 1894. That was within the forty days, according to the date of the mortgage and the recital, and that is also headed: "State of South Carolina, county of York. Whereas, I, John Gelzer, of the county and State aforesaid." If John Gelzer then was a resident of York County, and executed that mortgage and delivered it in December, 1893, and it was recorded in York County on the 5th of January, 1894, then that mortgage was recorded

in the office where, by law, it should be recorded, and was
recorded within the time which the law directs, and is valid
against subsequent creditors and purchasers, if nothing else
appears; because, then, under that mortgage, the construct-
ive notice is given which the law provides by means of
recording. The defendant now, in his answer, sets up nu-
merous defenses, and I will not undertake to recapitulate
what I have said once, but go to some of the other issues.
He charges, the defendant charges, that this mortgage given
by Gelzer, John Gelzer, to Wescoat, trustee, and the two
given to the Savings Bank of Rock Hill, S. C., and trans-
ferred to Marshall, Wescoat & Co., who say they are now
the owners of all of them, was given for the purpose of
securing an advantage to the defendant, Gelzer, agreed to
or acquiesced in by the mortgagees, and that they gave him
a benefit, and, therefore, the mortgages are fraudulent, and,
as a necessary consequence, illegal and void. Now, that
raises a question of fact, upon which you will have to
determine to a certain extent; and the defense set up here
involves questions upon which I will give you some instruc-
tions. The first is this: That in this State, I charge you,
gentlemen, that a merchant—for instance, John Gelzer, in
this case—a merchant doing business, had a right to give a
mortgage to secure a valid indebtedness, covering his stock
of goods, and he had a right to include in that mortgage
not only the stock of goods then in existence, but after-
acquired, and as those goods came into the store and became
mingled with the stock, the lien of the mortgage fixed upon
and fastened those after-acquired goods. And, furthermore,
I charge you that it is not imperatively incumbent upon a
mortgagee, upon the very day the mortgage falls due, or
the condition is broken, that he is obliged to go forward
and foreclose the mortgage and take charge of the property.
The law is not so harsh. It is not now, and never was, the
law of this State. But the law requires that when he goes
forward, whether it be the day the condition of the mort-
gage is broken, or whether it be a considerable time after-

wards, that when he takes those goods, he takes them, how? Under the law, certainly, since the act of 1892; he does not take them as absolute owner. He takes possession of them as mortgagee, and even after they go into his possession, his possession is that of a mortgagee, because the statute of 1892 provides that the mortgagor, up to the very day of the sale, may come in, and by payment of the money due on the mortgage, and the expenses incurred by seizing the property, he can redeem and take the goods from under the hammer of the auctioneer that has not fallen. So that we come next, in the natural order, to the question, whether there was any collusion, any fraud, and that is a question for the jury, for you. There is an old maxim, that fraud is abhorred by the law, and whenever fraud enters into a transaction conceived in sin and brought forth in iniquity, it is outlawed, under the ban of the law, and no one can retain any rights tainted by fraud, especially by moral fraud.

Now, counsel, in their argument, have contended that in the mortgages, the words stated therein being: "It being hereby stipulated that I," that is, John Gelzer, "am to buy, sell, and carry on the hardware business with the said stock until the said debt is paid, or this mortgage foreclosed. All goods purchased to take the place of those sold." I am requested to charge you that that in itself is fraud. I refuse the request, and decline to charge you that. As I have already charged you, the meaning of a mortgage is the security which passes to the mortgagee to secure his debt, and if, after maturity, after the condition is broken, he has a right to go upon the goods and take them into his possession, and sell them to pay the debt, any longer or further holding of the goods permitted by the mortgagee is for what? Is as security for the payment of the debt until that debt is paid or the goods seized. Therefore, that request I refuse.

Now, the question comes back: When Gelzer executed this mortgage to Wescoat, was it fraudulent in itself? Was the debt merely a paper debt, and put there with a purpose

to hinder, delay, and defeat the creditors, or to deceive any one? Was that the intention entertained by Gelzer and Wescoat, and acted upon together—did they carry it out? Then, if that be so, if it be a fraudulent debt—that is, a made up debt or device—then that would be fraud, would destroy it. But the law goes further. Even though the debt be valid, though the consideration given be full and ample, yet, if the creditor and debtor arrange, through the device of a mortgage, or any other way, to secure, by means of that mortgage and those notes, a benefit to the debtor; in this case, if Wescoat or the Savings Bank of Rock Hill, though the debt to them was justly due and owing by Gelzer, and you so find, yet if they used that debt to draw up notes and mortgages which carried a benefit to the defendant, Gelzer, and it was so intended, and that was to be at the cost of any innocent creditor or purchaser, subsequent creditor or purchaser, and that the papers were used for that purpose, why, that would be fraudulent, and would destroy the notes and mortgages. So that comes back to this question: Was there any agreement, direct and expressed, or whether direct or expressed—was there an understanding and agreement between them, in any shape or form, that Gelzer was to derive any special benefit from these mortgages, and that Wescoat or the savings bank participated in that agreement, to the detriment of subsequent creditors or purchasers, or to deceive any creditor, it don't matter whether he was younger or older? Was that so? If it is, then that is fraudulent, and cannot be sustained.

Now, in regard to recording. The mortgagee is not bound to record his paper. It is a good paper without recording. He is only required to record it when he desires to obtain the priority of lien over the property covered by his mortgage; that is the purpose. Now, in this case, the defendant, Mr. Crawford, as set up in the answer, says that he took possession of these goods under a warrant of attachment issued from the clerk of this court, and held them as such. That warrant of attachment has been put in evidence.

Upon its face it is righteous,. and it was the duty of the sheriff to obey the mandate of that warrant—to go forward and seize the property of Gelzer, as directed in that warrant; and he says, under that warrant he took possession of this property, seized and held it under the warrant issued in this case of the Tabb & Jenkins Hardware Company against John Gelzer. Now, there is no dispute, that I have heard, but that that warrant of attachment was properly issued, that it was regular upon its face, that the plaintiff, the Tabb & Jenkins Hardware Company, have a valid debt, that is admitted. So that the question, then, in its last analysis, resolves itself down to this: Who has the better title, or who has the better right, to the possession of these goods, Marshall, Wescoat & Co., as the owners of these mortgages, the condition of which has been broken, if their mortgages be valid, as I have stated to you, or this Tabb & Jenkins Hardware Company? That question you must settle upon the face of the papers under the last mortgage, given on the 2d of December, and recorded in the county in which it is executed. If that mortgage is valid upon its face, and is not invalid for fraud, then I charge you, the mortgagees, Marshall, Wescoat & Co., should have a verdict in their favor. If, however, that mortgage is invalid, is tainted with fraud in any way I have endeavored to explain to you, then it is as nothing; it passes out of the case, and the Tabb & Jenkins Hardware Company's attachment would be the first lien, valid lien, upon the goods, and the sheriff would be entitled to his claim. Now, in regard to the damages—but before going further. The defendant makes certain requests to charge. There are eleven requests. Eleventh: If the jury are satisfied from the evidence that plaintiffs have failed to show that the mortgage of J. J. Wescoat, trustee, was recorded in Charleston County, where the mortgage recites John Gelzer resided when the mortgage was executed, the record of said mortgage in York County cannot avail against the claim of subsequent creditors without notice,

and the mortgage, as to them, is null and void.    That I charge you as a substantial request.

There are four solid pages of type-written matter, covering nine other requests to charge.   I have looked over them all carefully, and considered them, and have either refused to charge them as requested, or qualified them to a certain extent.    Except as charged, modified, or qualified, for the benefit of counsel, the other requests are refused on all the four pages.

Now as to the damages.    This complaint does not charge or allege that the plaintiffs, if you find that they are entitled to the recovery or possession, are entitled to any vindictive damages—that is, smart money, punitive damages—but it only alleges, and you as jurors can only give, such damages as are the natural and proximate consequences of the sheriff in taking the goods under that attachment, if you find that the plaintiffs should recover the goods.    What I mean by that is, the sheriff's fees are not included in that, nor the fees of individuals.    You could not include the attorneys' fees that these plaintiffs have paid; you couldn't include their traveling expenses, and so on.    On the contrary, it must be damage to the goods, sustained by reason of their unlawful taking by the sheriff, and, I might say, damage to the goods; that covers all actual and necessary expenses in caring for the goods—of looking after them or preserving them, or depreciation in value caused by the detention.

Under agreement of counsel, Mr. Foreman, if you find for the plaintiff, write on this separate paper: We find for the plaintiffs the property and so many dollars damages, writing out the amount of damages that you think they are entitled to.    If, on the other hand, you think that the verdict should be for the defendant, you will just write: We find for the defendant, and sign your name to it, and the word foreman under your name.

Under the foregoing charge the jury rendered the following verdict: "We find the value of the property in dispute

described herein to be $4,300. We find that the plaintiffs are now in possession of said property, and are entitled to recover and retain the same. We find no damage against defendant."

Thereafter, on the 16th day of November, 1894, a motion for a new trial was made in behalf of defendant, and was refused by the Court, and the following reasons therefor assigned:

First. That the Judge charged the jury that the mortgages were regular on their faces, thus confining jury to matters *de hors* mortgages to establish fraudulent collusion between bank and Gelzer. The duty of the Court is to construe all written instruments, and all that I said was in explanation of them. I explained the writing as it appeared to me, and, at most, it was my duty to do so. I did nothing more than that.

Second. For not construing the stipulations in the mortgages. If by that exception is meant that I did not tell the jury whether or not it was evidence of actual fraud, I will say this: That was a question for the jury. It was my duty as Judge to construe those papers according to their written effect, and I endeavored so to do; and in doing so I explained to the jury what, in my opinion, the writing meant. If, as to this matter, it is meant that I ought to have charged the jury that those stipulations were not *per se* fraudulent, and vitiated the notes and mortgages, then I can say that I don't think so, and need not reiterate what I have already said in the body of my charge in that respect. I am well aware that it brings up different questions. The counsel, learned in their profession, bring up difficult questions of law. It is with diffidence that I decide those issues, knowing that the counsel have studied the issues and are well prepared; but the duty is upon me to decide it as best I could, and I laid down the law as I thought applicable to the case.

Third. For charging the jury that the mortgage for $3,100 took precedence over attachment, instead of qualifying the

same to the amount actually due thereon, about $2,600. The basis of this action was the right to the possession of the goods, and if plaintiffs had a right to the possession, then they were entitled to a verdict to that effect. This action was not as to the amount due. It was a question as to who was entitled to the right of possession, and I can't grant a new trial on that, especially when what I say here is to be taken with my general charge. The lien of the attachment certainly could not be displaced on the excess, Marshall, Wescoat & Co. having purchased the mortgages with knowledge of the attachment. Well, as I remarked in the first part of this error, or alleged error: The subject matter of that action was the possession of the goods, and that is the main question submitted to the jury, who was entitled to the possession?

Fourth. For not charging the jury that the stipulations in mortgages was for the benefit of Gelzer, and rendered paper fraudulent *per se*. That is the fourth ground. That brings up the question of law, which was argued and I believe was substantially covered by the requests to charge, and I can only say that I expressed in my charges on that subject what I apprehend to be law.

Fifth. Ruling out testimony of Jenkins and Sawyer. I don't remember anything about ruling out the testimony of Jenkins and Sawyer.

Mr. McCaw: They were offered to prove the custom of banks in regard to renewals.

Ruling out the testimony of Sawyer and Jenkins. That is the fifth alleged error. I think counsel is laboring under misapprehension. What I meant was, that where a debt exists, and the question comes up whether a subsequent note is a renewal or payment thereof, it is not established by the testimony of expert witnesses as to the custom of banks, but that question was to be settled according to law, and that the law was that it was a question of fact in each case susceptible of proof.

Sixth. Badges of fraud is the sixth ground. It is very

general in its terms, and I overrule that also, because I think I covered the law—at least, all that occurred to me and all that was discussed in Court by counsel—and for these reasons, taken in connection with the charge in general, the motion for a new trial is refused.

From this judgment the defendant appeals on the following exceptions:

First. For that his Honor erred in refusing to charge the jury, as requested by counsel for defendant: "That the mortgage executed by John Gelzer to Savings Bank of Rock Hill, S. C., dated January 21st, 1893, due and payable one day after date, in the sum of $2,000, contains this stipulation, which was entirely unnecessary for the security of the Savings Bank, but benefits the mortgage debtor, John Gelzer, and injures his other creditors, viz: 'It being hereby stipulated that I am to buy, sell, and carry on the hardware business with the said stock of goods until the said debt is paid or this mortgage foreclosed, all goods purchased to take the place of those sold.' By means of this stipulation in the mortgage, it was agreed between the savings bank and John Gelzer that the latter should retain possession of the stock of goods, not only until maturity—that is, one day after date of mortgage, the 21st day of January, 1893—but also after that time, indefinitely, until the debt should be paid or the mortgage foreclosed. Until payment of the debt or foreclosure of the mortgage, both the possession and the right of disposition remained with the mortgagor, John Gelzer. He was to deal with the property as his own, sell it at retail, and use the money thus obtained to replenish his stock. There is no covenant to account with the mortgagee, nor any recognition that the property is sold for his benefit. Instead of the mortgage being directed solely to the *bona fide* security of the debt then existing, and its payment at maturity, one day after its date, it is based on the idea that the debt may be indefinitely prolonged. All this appearing on the face of the mortgage itself, renders same

as to subsequent creditors without notice fraudulent *per se*—that is to say, fraudulent by force of its own terms and stipulations, which are not susceptible of explanation." a. Erred, further, in refusing to charge the jury, as requested by counsel for defendant in their second request, the following: "The mortgagee, having accepted the foregoing mortgage, with the stipulation urged as the special vice therein, necessarily assented to all that was contained in said stipulation. Both mortgagor and mortgagee are guilty of fraud. The debtor, Gelzer, gains what he is not entitled to, at the expense of creditors, and enjoys the property embraced in the mortgage, independently of them, while the savings bank, the favored creditor, gains a preference by enabling the mortgage debtor to commit this injustice to the rest of his creditors." b. Erred, further, in refusing to charge the jury, as requested by counsel for defendant in their third request, the following: "That the mortgage executed by John Gelzer to the Savings Bank of Rock Hill, dated December 2d, 1893, due and payable December 15th, 1893, to secure notes aggregating $3,100, contains on its face the identical vice pointed out in the mortgage dated January 21st, 1893. For the reasons indicated in the first request to charge, this mortgage is also fraudulent by force of its own terms and stipulations." c. Erred further in charging the jury: "Now counsel in their argument have contended that in the mortgages, the words stated therein being: 'It being hereby stipulated that I,' that is, John Gelzer, 'am to buy, sell, and carry on the hardware business with the said stock until said debt is paid, or this mortgage foreclosed; all goods purchased to take the place of those sold.' I am requested to charge you, that that in itself is fraud. I refuse the request, and decline to charge you that. As I have already charged you, the meaning of a mortgage is the security which passes to the mortgagee to secure his debt, and if, after maturity, after the condition is broken, he has a right to go upon the goods and take them into his possession and sell them to pay the debt, any longer or further

holding of the goods permitted by the mortgagee is for what? Is as security for the payment of debt until that debt is paid or the goods seized. Therefore, that request I refuse."

Second. For that his Honor erred in not charging the jury, as requested by counsel for defendant, as follows: "In South Carolina, when a mortgagor is suffered to remain in possession of personal property, goods and chattels embraced in a chattel mortgage, after maturity and condition broken, by failure of the mortgagor to pay the mortgage debt at maturity, it is settled law, that the character of the possession becomes a question of fact, and must be submitted to the jury with the burden of proof upon the mortgagee—in this case, the bank and its assignees—that the possession is not retained by the mortgagor, Gelzer, for his own benefit." a. And further erred in refusing to charge the jury, as requested by counsel for defendant: "The exception to this rule being, when the mortgage, by its terms and stipulations on its face, shows that possession was retained by the mortgagor, after condition broken, for his own benefit. When this is apparent on the face of the mortgage, it becomes the province of the Court to instruct the jury that the mortgage is fraudulent as to subsequent creditors without notice, by reason of said stipulations and the terms of the mortgage itself."

Third. For that his Honor erred in not charging the jury, as requested by counsel for defendant: "In this State, a chattel mortgage is a conditional conveyance, and upon breach of the condition of the mortgage by failure of the mortgage debtor to pay the mortgage debt at maturity, the mortgagee becomes the legal owner of the property covered by the mortgage." a. And erred further in charging the jury as follows: "But the law requires, when he goes forward, whether it be the day the condition of the mortgage is broken, or whether it be a considerable time afterwards, that when he takes those goods, he takes them how? Under the law, certainly since the act of 1892, he does not

take them as absolute owner. He takes possession of them as mortgagee, and even after they go into his possession, his possession is that of a mortgagee, because the statute of 1892 provides that the mortgagor, up to the very day of the sale, may come in, and by payment of the money due on the mortgage, and the expenses incurred by seizing the property, he can redeem and take the goods from under the hammer of the auctioneer that has not fallen." b. And erred further in not charging the jury, as requested by counsel for defendant: "That the mortgage executed by John Gelzer to J. J. Wescoat, trustee, dated August 17th, 1892, due and payable forty days after date, stipulates that after condition broken, that the said J. J. Wescoat, trustee, his heirs, executors, administrators, attorneys or agents, enter and take possession and custody of the property embraced in the said mortgage, and the same to hold and detain to his own use and behoof as his own goods and chattels, henceforth and forever. The effect of this stipulation was to vest the title to all property embraced in the mortgage absolutely in the mortgagee, without requiring him to account for the proceeds of sale of the property, or any surplus derived therefrom, after payment of the mortgage debt."

Fourth. For that his Honor erred in not charging the jury, as requested by counsel for defendant: "If the jury are satisfied from the evidence that John Gelzer has made a transfer of all, or a large portion, of his property, by executing mortgages thereon to J. J. Wescoat, trustee, and the Savings Bank of Rock Hill, without notice of said mortgages to his other creditors, and that he retained possession of the property embraced in said mortgages, using and claiming it as his own, it will require very strong evidence to rebut the presumption of fraud arising from such retention of possession after the condition of the mortgages were broken, and the burden of proof to rebut the presumption of fraud rests upon the plaintiffs, the assignees of the original mortgagees."

Fifth. For that his Honor erred in not charging the jury, as requested by counsel for defendant: "If the jury are sat-

isfied from the stipulations and terms of the mortgages themselves, and from the other evidence in the case, that each of the three mortgages upon which plaintiffs base their claim to the property in dispute, was withheld from being recorded within forty days, as required by law, pursuant to any agreement or understanding had between John Gelzer and the respective mortgagees, so as to enable the said John Gelzer to continue his business and appear to the world as the absolute owner of the stock of goods in his possession, and that as a result thereof, that innocent parties were defrauded and deceived into selling him goods that went into his stock, upon the faith that he was the owner of the stock in his possession, then each of said mortgages to all creditors of John Gelzer, who were thus misled, deceived, and defrauded into selling the said John Gelzer goods and merchandise, are absolutely fraudulent, null and void." a. And erred further in charging the jury, in the face of said request, as follows: "Now, in regard to recording. The mortgagee is not bound to record his paper. It is a good paper without recording; he is only required to record it when he desires to obtain priority of lien over the property covered by his mortgage—that is the purpose."

Sixth. For that his Honor erred in not charging the jury, as requested by counsel for defendant: "If the testimony satisfies the jury that John Gelzer executed to the Savings Bank of Rock Hill, S. C., notes and mortgages to the amount of $5,100, and that he never did owe the bank more than $3,100, the presumption of fraud would be very great, that such mortgages were executed not only to secure an alleged indebtedness of $3,100, but also for the purpose of defrauding, defeating, and delaying his other creditors, and the burden of disproving this violent presumption of fraud would be upon the plaintiffs in this action."

Seventh. For that his Honor erred in charging the jury that "All three of these mortgages, broadly speaking, are drawn in compliance and executed in compliance with law, and upon their face appear to be regular and correct." And

in not charging the jury that each of the three mortgages contained unusual and extraordinary stipulations and agreements, to wit: In each of the mortgages executed by John Gelzer to the Savings Bank of Rock Hill, S. C., the following: "It being hereby stipulated, that I am to buy, sell, and carry on the hardware business with the said stock of goods until the said debt is paid, or this mortgage foreclosed; all goods purchased to take the place of those sold." And in the mortgage executed by said John Gelzer to J. J. Wescoat, trustee, on the 17th day of August, 1892, the following: "That after condition is broken, that the said J. J. Wescoat, trustee, his heirs, executors, administrators, attorneys or agents, enter and take possession and custody of the property embraced in said mortgage, and the same to hold and detain to his own use and behoof, as his own goods and chattels, henceforth and forever." 1. And further erred in not construing the aforesaid stipulations and agreements himself.

Eighth. For that his Honor erred in charging the jury as follows: "So that it comes back to this question: Was there any agreement, direct and expressed, whether direct and expressed, was there an understanding and agreement, between them in any shape or form, that Gelzer was to derive any special benefit from these mortgages, and that Wescoat or the savings bank participated in that agreement, to the detriment of subsequent creditors or purchasers, or to deceive any creditor, it don't matter whether he was younger or older? Was that so? If it is, then that is fraudulent, and cannot be sustained." Whereas it is respectfully submitted that his Honor should have construed the stipulation and agreement between the parties, apparent upon the face of both of the mortgages executed by John Gelzer to the Savings Bank of Rock Hill on the 21st day of January, 1893, and the 2d day of December, 1893, respectively, viz: "It being hereby stipulated that I am to buy, sell, and carry on the hardware business with the said stock of goods until the said debt is paid, or this mortgage foreclosed; all goods

purchased to take the place of those sold," and not have left same to the jury to construe. 1. And further erred in charging the jury as follows: "In this case, if Wescoat or the Savings Bank of Rock Hill, though the debt to them was justly due and owing by Gelzer, and you so find, yet if they used that debt to draw up notes and mortgages, which carried a benefit to the defendant, Gelzer, and it was so intended, and that was to be at the cost of any innocent creditor or purchaser, subsequent creditor or purchaser, and that the papers were used for that purpose, why that would be fraudulent, and would destroy the notes and mortgages;" thereby leaving it to the jury to construe the agreements and stipulations in the mortgages contained, under which the mortgagor continued in possession after condition broken, using the stock of goods as his own; whereas his Honor should have construed said agreements and stipulations on the face of the mortgage himself. 2. And erred further in charging the jury that they must pass upon the question whether the mortgages were executed for the purpose of defrauding the creditors of Gelzer—thus, in effect, leaving the onus of proving the fraud upon the defendant; and in not charging that fraud was presumed from the stipulations and agreements contained in said mortgages, and from the fact of unchanged possession of the stock of merchandise after condition broken in the mortgagor; and that this evidence of fraud was conclusive, unless the plaintiffs claiming the right to possession of the stock of goods under the mortgages had proved to the satisfaction of the jury that the mortgages were executed in good faith, and without any intent to defraud the creditors of Gelzer. 3. And erred further in not specifically charging the jury, upon whom rested the burden of disproving the presumption of fraud.

Ninth. For that his Honor erred in charging the jury as follows: "So that the question then, in its last analysis, resolves itself down to this: Who has the better title or has the better right to the possession of those goods, Marshall, Wescoat & Co., as the owners of these mortgages, the con-

dition of which has been broken, if their mortgages be valid, as I have stated to you, or this Tabb & Jenkins Hardware Company? That question you must settle upon the face of the papers under the last mortgage, given on the 2d of December, and recorded in the county in which it was executed;" thereby leaving it to the jury to construe a written instrument; whereas his Honor should have construed the mortgage of December 2d, 1893, himself.

Tenth. Because his Honor erred in refusing defendant's motion for a new trial, made upon the minutes, upon the following grounds, to wit: 1. For error in charging the jury that "All three of these mortgages, broadly speaking, are drawn in compliance and executed in compliance with law, and upon their faces appear to be regular and correct;" thereby confining the jury to evidence *de hors* the mortgages to establish fraudulent collusion between the savings bank and John Gelzer. 2. For error in not himself construing the stipulations in the mortgages. 3. For error in charging the jury that the mortgage to savings bank, dated December 2d, 1893, for $3,100, took precedence over the attachment, "if that mortgage is valid upon its face and is not invalid for fraud," instead of at least qualifying same to the amount alleged to be actually due thereon, about $2,600. 4. For error in not charging the jury that the stipulations in the mortgages to the savings bank were for the benefit of the debtor, John Gelzer, and rendered said papers fraudulent *per se* as to subsequent creditors and purchasers without notice. 5. The fifth ground urged for a new trial is abandoned. 6. And further erred in refusing defendant's motion for a new trial, on the ground that the badges of fraud arising from the continued possession of the mortgagor after conditions of the mortgages were broken, having been established by the agreements and stipulations in the mortgages themselves, no inquiry into the intention of the parties was necessary or admissible.

*Messrs. Finley & Brice* and *Wm. B. McCaw,* for appellant.

14—45

*Messrs. C. E. Spencer* and *Hart & Cherry,* contra.

Sept. 19, 1895. The opinion of the Court was delivered by

MR. JUSTICE POPE. The plaintiffs began this action on the 19th day of April, 1894, in the Court of Common Pleas for York County, in this State, against the defendant, who is sheriff of that county, for claim and delivery of certain personal property, consisting of goods, wares, and merchandise, as well as certain show cases, etc., which they claim to have acquired as mortgagees under three chattel mortgages executed by one John Gelzer, after the condition of each was broken. The defendant denied plaintiffs' right to such relief, and justified his possession of all such personal property by reason of a certain warrant of attachment duly issued to him as sheriff at the suit of the Tabb & Jenkins Hardware Company, as creditors of the said John Gelzer.

The action came on for trial before his Honor, Judge Aldrich, and a jury. At the hearing, several witnesses were examined in open court, and the depositions of several others were published. The defendant presented eleven requests to charge. The presiding Judge refused all but two of them. After the Judge's charge, the jury rendered a verdict in favor of the plaintiffs. Thereupon the defendant moved for a new trial. This was refused. After entry of judgment, the defendant appealed to this Court. These grounds of appeal, preceded by the Judge's charge, will be reported, and also his reasons for refusing a new trial.

Before these grounds of appeal are discussed, it will be better to make a brief statement of the facts underlying this controversy. The plaintiffs are merchants, doing business in the city of Charleston, in this State, while Tabb & Jenkins Hardware Company is a corporation doing business in the city of Baltimore, Maryland. Although Crawford, as sheriff, is the nominal defendant, the contest is really between these two firms over the assets of the unfortunate merchant, John Gelzer, who lives at Rock Hill, in this State. It seems that John Gelzer, being indebted to J. J. Wescoat

as trustee in the sum of $700, executed a note secured by a mortgage on all his personal property as a merchant, as well that in his storehouse as that which he should from time to time add to his stock. Forty days was expressed as the time the debt should mature from the date of its execution—17th August, 1893. This mortgage was not placed on record until 5th January, 1894, and was never recorded in the county of Charleston, where Gelzer lived when he executed it. The plaintiffs subsequently had this mortgage assigned to them. Gelzer paid all but about $300 due on this debt and mortgage. On the 21st day of January, 1893, the said Gelzer made his obligation in writing, due one day after its date, for the sum of $2,000, and executed a mortgage of all his stock in trade as a merchant at Rock Hill, S. C., together with a mortgage on such goods, wares, and merchandise as he might add thereto, to the Savings Bank of Rock Hill, S. C. There was inserted in said mortgage this stipulation: "It being hereby stipulated that I am to buy, sell, and carry on the hardware business with the said stock until the said debt is paid, or this mortgage foreclosed—all the goods purchased to take the place of those sold." This mortgage was recorded on the 5th January, 1894. And on the 2d day of January, 1893, the said John Gelzer executed a mortgage to secure five notes—one dated 29th June, 1893, for $500, and due 1st November, 1893; one dated 29th June, 1893, for $1,000, due 27th September, 1893; one dated September 6th, 1893, for $300, due December 1st, 1893; one dated September 15th, 1893, for $500, due December 15th, 1893, and one dated December 2d, 1893, for $800, due and payable on demand. This mortgage was recorded on 5th January, 1894. Both these mortgages were assigned for value to the plaintiffs, and the latter contained a stipulation similar in effect to that above quoted. It is thus evident that the first mortgage has never been recorded as required by law, and as the four notes held by the Tabb & Jenkins Hardware Company were made by John Gelzer to that company after the execution of the first two mortgages and

before they were placed on record, these two mortgages need
not for the present be considered.    The last mortgage was
not only recorded within the forty days next ensuing its
execution, but also the condition thereof was broken before
any writ in attachment was issued under which alone the
defendant, Crawford, claims the goods.    This contest, there-
fore, to a large extent, revolves about this third mortgage.
If this mortgage is valid, the plaintiffs are entitled to have
all the stock in trade of John Gelzer turned over to them;
but if it is not valid, then the defendant as sheriff properly
holds the same freed from any interference or control of the
plaintiffs.    Before going any further, it may as well be
stated, that if the plaintiffs hold this third mortgage, and
are entitled to the possession of all these goods, they will
be compelled to hold the same under the act of the General
Assembly of this State, entitled "An act regulating chattel
mortgages, and the payment and satisfaction thereof."
21 Stat. at Large, p. 7.    The text of that act, avoid-
ing the enacting words, is: "That the mortgagor of any
chattel shall have the right to redeem the property mort-
gaged by him at any time before sale by the mortgagee, by
paying the mortgage debt and any costs incurred in attempt-
ing to enforce its payment, and a tender made by the mort-
gagor of an amount sufficient to pay said debt and cost, if
not accepted, shall render the mortgage null and void."

In considering appellant's exceptions, we will follow the
order adopted in his argument, which involves attention at
this time to the first, second, and third of such exceptions.
The proposition contended for is this: In South Carolina,
in an instrument whereby a conditional sale of personal
property is provided, and an agreement therein appears,
whereby the grantor or owner of the personal property has
expressly reserved the right to retain said personal property,
and no notice is given to the world thereof, so far as
subsequent purchasers or creditors are concerned,
such sale of property is null and void.    And it is
further contended that, inasmuch as a mortgagee, after con-

dition broken, has the right to take the mortgaged property in his possession, but does not do so, even allowing the mortgagor to sell and trade such property, the mortgage in such a case must and ought to be treated—as a conditional sale would be—as null and void as to subsequent creditors or purchasers. That there is a contrariety of judicial opinion on this subject, so far as mortgagees are concerned, outside of our State, there can be no doubt. But in our State, it has been decided that it will not render a chattel mortgage null and void, if the mortgagee allows the mortgagor to retain possession of the mortgaged chattels, after condition broken. Mortgages with us are nothing more than securities for debt, and this is as true of chattel mortgages as mortgages of real estate. The distinction between the two sets of mortgages is, that in chattel mortgages, after condition broken, the mortgagee may take possession of and sell the property, while as to mortgages on real estate, the mortgagee, as such, has no such power. As we understand the charge of the Circuit Judge, he sought to enforce this doctrine. We will not press this investigation, for this Court quite recently, through the Chief Justice as the organ of the Court, has considered the effect of a mortgage in this State, as will be found in *Porter* v. *Stricker*, 44 S. C., 183. In his opinion, amongst other things, he clearly recognizes the propriety of such indulgence from the creditor to the debtor, as is evidenced by allowing the debtor to retain the mortgaged property after the condition broken. In this connection he used this language: "It seems to us that the whole testimony points clearly to the conclusion, that the sole object of giving the mortgage was to secure an honest debt due to a very indulgent creditor, and another part of which was for money then loaned to the debtor to carry on his business. The subsequent conduct of the party negatives the idea that there was any intention that the mortgage should operate as a transfer of the property, for the conceded fact is, that the debtor was permitted to retain the property for more than three months after the ma-

turity of the mortgage debt." But it is contended in this case, that the stipulation in the mortgages from John Gelzer to the Savings Bank of Rock Hill, S. C., whereby the said John Gelzer especially provided that he should retain possession of the property mortgaged, and sell the same in his business as merchant until the said debt is paid, or this mortgage foreclosed; all goods bought to take the place of the goods sold, and that such stipulation is illegal. The third mortgage became due 15th December, 1893, and the said Gelzer was allowed to hold the goods until 6th of February, 1894—one month and twenty-one days after condition broken. But from the 5th January, 1894, when the last mortgage was duly recorded, all persons had constructive notice, at least, of this stipulation. And appellant contends that it was the duty of the Circuit Judge to charge that this stipulation in the two last mortgages was conclusive evidence of a fraudulent purpose as between the mortgagor and mortgagee—that it was a badge of fraud. Was the charge of the Judge correct, when he refused to so construe the mortgage? If a man, as a legal result necessarily following certain admitted facts, has a right to retain mortgaged chattels after condition broken until a foreclosure of the mortgage, will it be wrong for him to have that legal result stated in a paper containing those admitted facts? In other words, if a mortgagor of chattels has the right to retain those chattels until after condition of his mortgage broken, *and also* until foreclosure of said mortgage, even if no agreement as to such result is made in the mortgage, will that right be destroyed, if he stipulates in words written in the mortgage for such possession after condition broken and until foreclosure? We do not think so. Now, of course, all that is said up to this moment on this subject relates to the simple presence of the stipulation referred to in the mortgage. But in the event it should be made to appear by testimony that this stipulation and its observance by these parties was because of a corrupt agreement between the mortgagor and the mortgagee, whereby an advantage to

the mortgagor over his other creditors was to be obtained, why such an agreement would be a fraud, and would upset everything and everybody connected with it. However, it must be remembered that this would place the burden of proof upon the defendant to prove such a fraud. The charge of the Circuit Judge meets this issue fully, fairly, and thoroughly.

As to the fourth ground of appeal, it nowhere appears in the "Case" that the mortgages held by the plaintiffs as assignees cover all the property of John Gelzer, and, of course, therefore, the Circuit Judge could not charge as requested, that the three mortgages were executed in fraud. The burden of proof was still, therefore, upon the appellant who alleged fraud.

As to the fifth ground of appeal. In this State, the mortgagee is not bound to record his mortgage. The mortgagee loses his prior lien as to subsequent lienees and creditors if he fails to so record his mortgage. As we understand the Circuit Judge, he did charge that if any corrupt agreement existed between the mortgagor and mortgagee as to not recording the two first mortgages within forty days after their execution, they would be annulled as fraudulent.

As to the sixth ground of appeal. The alleged error here referred to seems to us to have been fully cured by the charge of the Judge. It is not required of him that he shall charge just in the words of the request or in the order in which they occur. He must cover such requests in his charge. When he has done so, the ends of the law in this regard are fully met.

As to the seventh ground of appeal. It was the duty of the Circuit Judge to construe the mortgage. He did so. His language as quoted in this ground of appeal is frank and full. He was not in error in what he said. And the Circuit Judge did not err in not charging, as requested, that each of the three mortgages contained unusual and extra-

ordinary stipulations as therein pointed out, as we have hereinbefore fully shown.

As to the eighth ground of appeal.    So far as this ground relates to the stipulations contained in the mortgages, we have already decided that it is not well taken.    So far as the effect of testimony *aliunde* the terms of the mortgages themselves, these being questions of fact, we have no power to review them, except to say that the instructions of the Circuit Judge in relation thereto are approved by us.

As to the ninth ground of appeal.    We see no error in the language used by the Circuit Judge.    The question was really who had the better title to this personal property. All the other questions were incidents to this leading, controlling question.    Of course, the subordinate questions had to be decided in order to solve the question of title.

As to the tenth ground of appeal.    We can only say, after considering the whole case, that the Circuit Judge did not err here.    It was a motion based upon the minutes of the Court.    Where facts are involved, we have no right to express any opinion.    And where law points are raised, we are satisfied with the conclusions of the Circuit Judge.    It follows, therefore, that all these grounds of appeal must be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

PETITION FOR REHEARING was filed on September 25, 1895, and rehearing refused October 11, 1895.