**In the Matter of BEEDLE–WHITON COMPANY, a partnership of George A. Beedle and John S. Whiton, Bankrupt.**

**No. 19804.**

United States District Court
D. Minnesota, Fourth Division.

Aug. 12, 1955.

William Murphy, St. Paul, Minn., for respondent, Progress Finance.

Robert F. Henson, Minneapolis, Minn., Attorney for Trustee.

George A. Heisey, Minneapolis, Minn., Referee in Bankruptcy.

DEVITT, District Judge.

This is an appeal from an order of the Referee in Bankruptcy holding that certain real estate and chattel mortgages made by the bankrupt partnership in favor of a creditor, Progress Finance Company, are void as against the trustee of

the partnership estate because they constituted preferential transfers under Section 60 of the Bankruptcy Act as amended 11 U.S.C.A. § 96.

The Referee has filed his finding of the ultimate facts and the legal conclusions to be drawn therefrom, as follows:

"1. On January 27, 1954, Beedle-Whiton Company (a partnership) and each member thereof filed voluntary petitions in bankruptcy.

"2. On August 24, 1953, said partnership transferred to Progress Finance Company (Progress) all of its real estate and most of its physical personal property by giving Progress two mortgages, one on said real estate and one on said personal property, to secure a loan of $20,-000.00 which had been made to the partnership by Progress on June 23, 1953, which had not been paid, and to secure a further advance of $12,-000.00 which was made to the partnership by Progress at the time the several mortgages aforesaid were made and delivered.

"3. By agreement between the partnership and Progress, the several mortgages aforesaid were withheld from public record and thus constituted secret liens until November 27, 1953 when the real estate mortgage was filed for public record and until November 28, 1953 when the chattel mortgage was filed for public record.

"4. On November 27, 1953, the partnership was insolvent within the meaning of that term as it is defined and employed in the Bankruptcy Act as amended.

"5. On November 27, 1953, Progress had reasonable cause to believe that the partnership was insolvent.

"6. The real estate mortgage aforesaid not having become so far perfected prior to November 27, 1953 (the date of recording) that no subsequent bona fide purchase from the partnership could create rights in the security superior to the rights of Progress and the chattel mortgage aforesaid not having become so far perfected prior to November 28, 1953 (the date of recording) that no subsequent lien upon the security obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of Progress, the transfers evidenced by said mortgages must be deemed to have been made immediately before the filing of the bankruptcy petition and also must be deemed to have been made to Progress for or on account of the antecedent indebtedness arising as set forth in paragraph 2 hereof.

"7. In this bankruptcy proceedings, the effect of the transfers aforesaid will be to enable Progress to obtain a greater percentage of its debt than some other creditors of the same class.

"8. The transfers aforesaid result in a depletion of the bankrupt estate of the partnership.

"9. The transfers aforesaid are void as against the bankruptcy trustee."

In addition to his findings of ultimate facts and legal conclusions, the Referee has also filed, in response to the provisions of Section 39, sub. a(8) of the Bankruptcy Act as amended 11 U.S.C.A. § 67, sub. a(8), an extensive summary of the evidence taken from his personal notes.

In this summary the Referee reports as follows with reference to evidence of the alleged collusion to withhold the filing of the mortgages between the bankrupt partners and President Pastor of the Progress Finance Company:

"On November 27, 1953, by appointment previously made by telephone, Beedle and Whiton arrived not later than 1:30 P. M. at the offices of Progress in St. Paul and there immediately met Pastor. None of them had had lunch and within a few minutes the three men went to a cafe about a block away where they ordered food. Beedle

testified that 'Pastor knew we had had a meeting with First Acceptance Corporation in the morning and he wanted to know what happened'. The trustee, Mr. Arnao, on cross examination by Progress' attorney, testified that prior to November 27, 1953, Pastor called him 'to inquire about Beedle-Whiton Company, "what was cooking" as he expressed it' and that Pastor was then advised that 'we had discovered some fraud' whereupon Pastor inquired 'How much?' and was told that the amount was not as yet known.

"Immediately after the food orders had been placed at the cafe, Pastor was informed that the partnership was 'busted'. Pastor then stated he was going to call Nilva and tell him to place the mortgages on record. On cross examination Pastor was asked this question: 'As soon as you learned there was trouble, you had the mortgages recorded?' A. That was up to Nilva.

"Q. You called him to make sure he performed his duty? A. That is right.

"After stating he was going to call Nilva, Pastor then left the table and remained away for some minutes. When he returned to the table Pastor was angry and stated he had learned that another mortgage, held by Whiton's wife, Margaret Peters Whiton, had already been recorded. Whiton then told him there were three mortgages on record, whereupon at about 2:00 P. M. Pastor left the cafe. After Beedle and Whiton finished their lunch, they went to Progress' office where Pastor inquired about the fraudulent receivables the partnership had discounted at First Acceptance Corporation and Beedle testified: 'He was aware we were in trouble with First Acceptance Corporation.'

"The three mortgages mentioned by Whiton covered the partnership real estate and had been filed for rec-

ord on or about November 20, 1953. All of them were superior in point of time to the mortgages held by Progress. One of these mortgages was held by Stella Nelson Hoar for $10,-000 with accrued interest, another was held by Clara Chapek Crawley for $3,000 with accrued interest, and still another was held by Whiton's wife, Margaret Peters Whiton, for $23,000, which Whiton prevailed upon his wife to relinquish shortly after November 27, 1953.

"As heretofore stated, the real estate mortgage held by Progress was filed for record at 3:10 P. M. on November 27, 1953. According to both Beedle's and Whiton's testimony, Pastor had been told about 2:00 P. M. that the partnership was 'busted'. Even Pastor in his testimony admits that he and Beedle and Whiton got to the cafe at 2:00 P. M. 'or close to it' and were there 35 to 40 minutes only. Thus according to all three witnesses, Pastor, as President of Progress Finance Company, knew the partnership was 'busted' before the mortgages held by Progress were filed for public record. As heretofore stated, the chattel mortgage was not filed for record until November 28, 1953."

█ The parties have waived their right to a consideration of this appeal on a transcript. Hence the findings of the Referee are conclusive, unless clearly erroneous. In re Settem, D.C.Minn. 1954, 118 F.Supp. 897; In re Burntside Lodge, D.C.Minn.1934, 7 F.Supp. 785.

The scope of review of the Referee's findings of fact is strictly limited by General Order in Bankruptcy No. 47, which provides that:

"Unless otherwise directed in the order of reference, the report of a referee * * * shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous * * *"

█ The Referee's findings are not clearly erroneous when they are support-

ed by substantial evidence. Equitable Life Assurance Co. v. Deutschle, 8 Cir., 132 F.2d 525, 526.

I am satisfied from a review of the Referee's findings and summary of the evidence, and from an examination of the exhibits and a consideration of the arguments, that the Referee's findings and order are not clearly erroneous, are supported by substantial evidence, and are not contrary to the law or the evidence.

■■ The evidence amply sustains the Referee's findings that the petitioner, Progress Finance Company, had reasonable cause to believe that the partners were insolvent at the time of the recordation of the real property and chattel mortgages on November 27 and 28, 1954. Prior to recordation these mortgages were not perfected within the meaning of Section 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96 sub. a; consequently, they were subject to the trustee's petition to set them aside under Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96 sub. b. See Corn Exchange National Bank v. Klauder, 1943, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884.

■ Issue has also been made as to the Referee's authority to entertain summary jurisdiction over this controversy. I am satisfied that the Referee had ample summary jurisdiction by virtue of the bankrupt's actual possession of the items of property in question at the time of the filing of the petition of bankruptcy. The decided cases state that the actual possession gives the necessary summary jurisdiction. See Thompson v. Magnolia Petroleum Co., 1940, 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876; Duda v. Sterling Manufacturing Co., 8 Cir., 1949, 178 F.2d 428, 433–435, 14 A.L.R.2d 899; Milens v. Bostian, 8 Cir., 1943, 139 F.2d 282, 284.

The trustee in bankruptcy has raised some question as to the right of the Court to accept the appeal in view of the fact that it was not timely made, and that the requisite fee was not promptly paid. The Court did accept jurisdiction of the appeal and in view of the decision in favor of the trustee, it is unnecessary to dwell on the question of whether or not good cause was shown for an extension of the ten-day filing period or whether the failure to promptly pay the requisite fee deprived the petitioner of his right to appeal. Suffice it for the Court to observe, obitur dictum, that the fact of petitioner's incarceration in a federal correctional institution at the time of the Referee's order, and hence his unavailability for discussion with his counsel, impressed the Court as a sufficient reason for accepting jurisdiction.

The Referee's order is confirmed.