**NATIONAL DISCOUNT CORPORA-
TION, Appellant,**

**v.**

**William B. TYSON, Jr., as Trustee for
Appliances, Inc., Bankrupt,
Appellee.**

**No. 7434.**

United States Court of Appeals
Fourth Circuit.

Argued June 11, 1957.

Decided Aug. 1, 1957.

Saunders M. Bridges, Florence, S. C. (Roy A. Powell, Columbia, S. C., and Bridges & Bridges, Florence, S. C., on brief), for appellant.

John M. Scott, Florence, S. C. (Bernard B. Dusenbury, Florence, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This is an appeal from an order requiring the mortgagee of chattels to account to the trustee of the bankrupt mortgagor for their value.

The Bankrupt, Appliances, Inc., was a corporation organized in 1953 for the purpose of operating a retail electrical appliance store. Arrangements were made with a finance company, the appellant here, to finance the major portion of its purchases to stock and its retail credit paper.

Under the "floor plan" arrangement, the bankrupt would order goods from a supplier with instructions to ship the goods to the bankrupt but to send all invoices to the finance company. The finance company would prepare, and send to the bankrupt, an appropriate note and mortgage which the bankrupt would execute and return to the finance company together with a check in an amount equal to 10% of the invoiced price. The finance company would then pay the supplier's invoice.

None of these mortgages were recorded at the time the transactions were handled.

By January 1954, it was apparent to the finance company that the bankrupt was in poor financial condition. An arrangement was concluded pursuant to which all collections on retail sales of goods covered by the finance company's mortgages were deposited directly to the account of the finance company. The situation continued to worsen, to the knowledge of the finance company, until on May 12, 15 and 17, 1954, it filed for recording 12 mortgages which had been executed by the bankrupt on various dates during the years 1953 and 1954. The date of the last of these mortgages was March 24, 1954.

At about the same time, in May 1954, the bankrupt being in default, the finance company demanded payment of all sums due and on May 26, 1954, took possession, with the apparent consent of the officials of the bankrupt, of all of the bankrupt's assets. Thereafter the finance company removed such of the assets as were covered by its mortgages.

In the following month, there was an adjudication of bankruptcy. Thereafter the trustee instituted this action to require the finance company to account for those assets which had been repossessed and removed by it.

The matter was referred to a Special Referee, who made findings of fact and conclusions of law which were adopted by the District Judge.

The finance company contends here that the repossessed chattels were its property before repossession and, hence, there was no "transfer" within the meaning of § 60 of the Bankruptcy Act. 11 U.S.C.A. § 96. It relies upon certain cases in South Carolina in which the court held that the holder of a chattel mortgage had such a legal title to the chattel as to support an action by him, under certain circumstances, for its pos-

session prior to any default of the mortgagor. Hill v. Winnsboro Granite Corp., 112 S.C. 243, 99 S.E. 836.

■ If it be assumed that the mortgagee had a technical legal title before default,[1] it does not bear upon the issue here. The Courts of South Carolina recognize the property and possessory rights of the mortgagor in the chattel,[2] and whether we denominate them legal or equitable, such property rights may be the subject of a preferential transfer within the meaning of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a(6).

■ It was true that under former acts, surrender of possession to a conditional vendor in a state which recognized only a contingent possessory right in the conditional vendee was not regarded as a voidable, preferential transfer, for the conditional vendor's title was precedent to the conditional sale and not dependent upon it. Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275. But we are not confronted with the question of the effect of subsequent amendments to the Act in that situation,[3] for the finance company's title, if it had any, was founded upon the mortgages executed and delivered to it by the debtor. While under the floor plan arrangement, the bankrupt's vendors sent their invoices directly to the finance company, there is nothing to suggest that the parties intended it to be the purchaser of the goods. It was merely one of the mechanical steps in the arrangement by which the finance company was financing the bankrupt's purchases. Whatever interest in the chattels became vested in the finance company, it was referable to the chattel mortgages and was derived from the bankrupt. The transfer of that title or interest was not complete within the meaning of the Bankruptcy Act, until the mortgages were recorded. 11 U.S.C.A. § 96, sub. a(2).

§ 60–101 of the Code of Laws of South Carolina of 1952 provides, " * * * chattel mortgages * * * shall be valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice only from the day and hour when they are recorded * * *."

■ That section has been construed by the Supreme Court of South Carolina in a manner consistent with the purposes

---

1. While this assumption is the predicate of the finance company's argument, it is probably unwarranted under more recent decisions of the Supreme Court of South Carolina. In General Motors Acceptance Corp. v. Hanahan, 146 S.C. 257, 143 S.E. 820, three of the five justices were of the opinion that the old common law rule expressed in earlier cases had been changed and that in South Carolina the execution and delivery of a chattel mortgage no longer transfers the legal title to the chattel to the mortgagee. The other two, reaching the same result, agreed that the mortgagee's title was hedged with many conditions and that in certain circumstances, even after a lawful seizure of the chattel by the mortgagee, the mortgagor could maintain an action against the mortgagee for conversion of the chattel. See also Atlas Finance Co. v. Credit Co., Inc., 216 S.C. 151, 57 S.E.2d 65; Maynard v. Bank of Kershaw, 188 S.C. 160, 198 S.E. 188; Marshall, Wescoat & Co. v. Crawford, 45 S.C. 189, 213, 22 S.E. 792; Goodwin v. Harrison, S.C., 98 S.E.2d 255.

The old common law notion that a chattel mortgage vested the legal title to the chattel in the mortgagee, subject only to defeasance upon performance of the condition, seems particularly inapposite to a mortgage of chattels held by the mortgagor as part of a stock of goods, which he, in the ordinary course of his business, is authorized to sell free of the lien of the mortgage.

2. Wilkes v. Southern Ry., 85 S.C. 346, 67 S.E. 292; Maynard v. Bank of Kershaw, 188 S.C. 160, 198 S.E. 188; Hutchison v. A. K. Brown Motors, 191 S.C. 319, 4 S.E.2d 268; General Motors Acceptance Corporation v. Hanahan, 146 S.C. 257, 143 S.E. 820.

3. See, however, Corn Exchange National Bank & Trust Co., Philadelphia v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, and the specific reference to the Bailey case in House Report No. 1293, 81st Congress, Second Session, 2 Congressional Service, 1950, page 1986.

of the more recent amendments to § 60 of the Bankruptcy Act. Justice Woods, later a member of this Court, speaking for the Supreme Court of South Carolina in Wardlaw v. Troy Oil Mill, 74 S.C. 368, 372–373, 54 S.E. 658, 660, said:

> "* * * Proof that a subsequent creditor did not even know of the existence of the property covered by an unrecorded mortgage would not avail the mortgagee, for the reason that the statute makes no such exception in the protection afforded to subsequent creditors without notice. Secret liens ought not to be favored, and we are not inclined to indulge in any attempts at refinement in the interpretation of the statute in order to protect those who from design or negligence fail to record their papers and then when disaster comes set them up against subsequent unsecured creditors."

Clearly, under the laws of South Caroline, the mortgages were ineffective as against subsequent creditors until they were recorded in May 1954. Under paragraphs (2) and (6) of subsection (a) of § 60 of the Act (11 U.S.C.A. § 96(a) (2) and (6) ) the transfers of the security can be deemed to have been made not earlier than the recording dates. The transfers thus accomplished in May 1954, on the dates on which the mortgages were recorded, were made on account of antecedent debts which arose contemporaneously with the earlier execution and delivery of the mortgages.

There is no question but that the bankrupt was known to be insolvent in May 1954 and an actual adjudication in bankruptcy having been made the following month, all of the elements of a preferential transfer are present. The Special Referee and the District Judge properly concluded that the finance company should account to the trustee for the chattels repossessed and removed by it. Corn Exchange National Bank & Trust Co., Philadelphia v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884; In re Morasco, 2 Cir., 233 F.2d 11; England v. Feist, D.C.N.D.Cal., 141 F.Supp. 824; In re Beedle-Whiton Co., D.C.Minn., 132 F.Supp. 558; and see B. F. Avery and Sons v. Davis, 5 Cir., 226 F.2d 942.

Such cases as In re Cunningham, 4 Cir., 64 F.2d 296, indicate that a different result might well have been reached had these transactions occurred prior to 1938. But we cannot disregard the plain language introduced by the amendment of § 60 of the Bankruptcy Act in 1938, as subsequently amended in 1950.

Affirmed.