PERKINS v. LOAN AND EXCHANGE BANK.

1. CONDITIONAL SALE—MORTGAGE.—A party received into his possession a piece of machinery under written contract to pay a certain price therefor at a date certain, the title to remain in the other party until paid for, and if default was made, all payments should be credited as rent and suit brought for amount remaining unpaid. *Held*, that this contract was one of sale and purchase money mortgage.

2. CHATTEL MORTGAGE—PRIORITIES.—A duly recorded mortgage of personal property in possession and of after-acquired machinery, a seizure and sale on default, and a purchase by the mortgagee, gives to the purchaser, both as mortgagee and purchaser, a prior right to a piece of machinery acquired

by the mortgagor and taken possession of by him subject to a mortgage
for its purchase price, after the execution of the older mortgage, such pur-
chase money mortgage not having been recorded until after the sale, and
not known to the purchaser until such record.

3. RECORDING—CASE CRITICISED.—The rule as to secret liens and unrecorded
mortgages declared in Norwood *v.* Norwood, 36 S. C., 343, approved.

Before HUDSON, J., Richland, October, 1893.

Action by Willis J. Perkins, trading as Perkins & Co., against
the Loan and Exchange Bank of Columbia, S. C. So much of
the contract referred to in the opinion as is material to the is-
sues, was as follows:

PHILADELPHIA, PA., September 23, 1892.
*Messrs. Perkins & Co., Grand Rapids, Mich.*

You will please ship the following goods that have prices
carried out, *via best route,*            R. R., to *our* address at
Fort Motte, State of S. C., for which *we* agree to pay you as
follows: ½ cash, 90 *days after* shipment of ¾ths the value of
order, balance as follows: Time from date of shipment of ¾ths
the value of order, ½ 6 months; $     months; $     months;
interest, 6%. Where three months or more time is given on
all or part, insurance is to be effected to the amount of unpaid
notes and accounts, loss, if any, payable to Perkins & Company,
as their interest may appear, and policy delivered to them
within thirty days from shipment; or Perkins & Company are
hereby entitled to effect said insurance, adding premium and
expense to amount of first note becoming due thereafter. * * *
All property sold under this contract shall be held and recog-
nized at all times as personal property. Title and ownership
of all property herein contracted for, and of all repairs and ad-
ditions thereto, and all contracts for machinery, made within
one year from date hereof, shall remain in Perkins & Co. until
the full purchase price is paid; and in case of any default in
any or either of the payments, all payments shall, at the option
of Perkins & Co., notice of which is hereby waived, become,
and be, at once due and payable, and said property may be
taken back by Perkins & Co., and all payments made shall
apply for rent, or Perkins & Co. may commence suit for full

amount remaining unpaid. * * * All machinery that is hereby ordered, purchased, and sold, is subject to the following warrantee and agreement: That each machine and part of mill included in mill drawing, and hereby purchased, shall be well made and of good material, and if properly set, run, and if rightly managed, shall be capable of performing all the functions in a proper manner, that it was represented by us in circulars to accomplish. If, upon trial, any machine, or part of the mill, shows any defect, or works improperly, and the purchasers, after intelligently following such directions as may be given them, shall be unable to make it operate well, written notice, stating wherein it fails to satisfy the warrantee, is to be given immediately by the purchaser to Perkins & Co., Grand Rapids, Mich., and a reasonable time allowed for the receipt of such notice and to remedy the defect (if any) described, unless it be of such nature that the purchaser can be advised by letter. If said Perkins & Co. are not able to make it operate well (the purchaser rendering friendly and necessary assistance), and the fault is in a machine, or part of mill machinery, it may be taken back by said Perkins & Co. The purchaser delivering the defective machine, or part of mill, at nearest freight depot, on receipt of order from said Perkins & Co., and all payments for the purchase of said machine, or part of mill, shall be refunded, and all claims for damage are to be cancelled thereby, or the defects remedied, and the machine, or part of mill, made to perform satisfactorily. If cause of failure is through improper management, or mill construction, or lack of proper appliances, or neglect to follow directions, then the purchaser to pay all expenses incurred. Use, after thirty days without such notice, shall be conclusive evidence of satisfaction and fulfilment of warrantee. (Here follows description and price of articles of machinery.)

(Signed)   FORT MOTTE LUMBER AND SHINGLE CO.,

CHARLES FRASER, *Treasurer.*

The Circuit Judge ruled as follows:

The question presented for decision is: Who was entitled to the property? In my opinion, the plaintiff was entitled to the

property. The defendant was not a subsequent purchaser for valuable consideration. Although the defendant's mortgage was made expressly to include after-acquired property, and would attach to the property as soon as it was purchased, it could only attach to such property in the condition in which it came into the purchaser's hands. If that property was already subject to mortgage or other liens, the general mortgage would not displace them, though they may be junior to it in point of time. It could only attach to such interest as the mortgagor acquired, and if he purchased property and gave a mortgage for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction; and no general lien impending over it, whether in the shape of a general mortgage or judgment, can displace such mortgage for purchase money. In such a case, failure to record the mortgage for purchase money makes no difference; it does not come within the reason of the recording acts. These laws are intended for the protection of subsequent, not prior, purchasers and creditors. *King* v. *Fraser*, 23 S. C., 566; *U. S.* v. *New Orleans R. R.*, 12 Wall., 362; 15 Am. & Eng. Enc. Law, 752, 753. It is, therefore, the judgment of the court, that the plaintiff have judgment against the defendant for the sum of seven hundred dollars, with interest thereon from the 27th June, 1893, and for the costs of the action.

Defendant appealed.

*Mr. Allen J. Green,* for appellant.

*Messrs. Abney & Thomas,* contra.

January 8, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The Fort Motte Lumber and Shingle Company purchased from James A. Peterkin, the "timber leaf" upon a certain tract of land in Richland County, together with certain machinery, boilers &c., then on said land, and to secure the payment of the purchase money thereof, on the 8th of August, 1892, executed a mortgage to said Peterkin upon all its stock of timber, lumber, and shingles, as well

that which it should thereafter manufacture and prepare for market, or otherwise acquire, as that which was then in existence, and also all the sheds, buildings, property, machinery, and plant then on the mill sites of said company, and also that which it should, from time to time thereafter, place on its said mill sites. This mortgage was duly assigned for value by said Peterkin to the defendant on the 13th of August, 1892, and the same was duly recorded, in the proper office, on the 22d of August, 1892. On the 23d of September, 1892, the said Lumber and Shingle Company entered into a written contract for the purchase of the several articles of personal property mentioned in the complaint from the plaintiff, consisting of machinery and other appliances to be used in its work as a portion of its "plant," a copy of which contract is set out in the "Case," and should be incorporated in the report of this case. In that contract it was stipulated that the title and ownership of the said property should remain in the plaintiff until the full purchase price was paid, and in case of default in payment, the property might be taken back, and such payments as had been made, should be applied for rent, or the plaintiff might bring suit for the amount remaining unpaid.

Upon the execution of this contract, the property mentioned in the complaint was delivered to the said lumber and shingle company, and by it placed upon its mill sites. On the 20th of December, 1892, the defendant, upon breach of the condition of its mortgage, seized the said property, and took it into its possession, where it remained until it was destroyed by fire some time in August, 1893. In the meantime, to wit: on the 27th of June, 1893, the plaintiff demanded from the defendant possession of said property, which demand being refused, this action was commenced to recover damages for the conversion of said property. It is conceded that no part of the purchase money of the property in dispute was ever paid by the lumber and shingle company to the plaintiff; that the contract above referred to, for the purchase of said property, was never recorded until the 7th of February, 1893; and that the defendant never had any notice, either actual or constructive, of such contract until that date. All the material facts being con-

ceded, a jury trial was waived, and the case was heard by his honor, Judge Hudson, upon the pleadings and the agreed statement of facts, who rendered judgment in favor of the plaintiff, and from his judgment defendant appealed upon the several grounds set out in the record, which need not be repeated here, as the sole question presented is one of law, which of the two parties has the legal right to the property in dispute, under the agreed facts.

It seems to us that the first question to be determined is, what was the true nature and legal character of the contract between the plaintiff and the Fort Motte Lumber and Shingle Company, a copy of which is set out in the "Case," under which the property in question was sold and delivered to said company by the plaintiff? Looking at the terms of that paper, in the light of the decisions of this court cited below, we cannot doubt that it was nothing more nor less than a mortgage on the property in dispute to secure the payment of the purchase money of said property. *Talmadge* v. *Oliver*, 14 S. C., 522; *Herring* v. *Cannon*, 21 S. C., 212; *Straub* v. *Screven*, 19 S. C., 445; *Talbott* v. *Sandifer*, 27 S. C., 624; *Singer Manufacturing Co.* v. *Smith*, 40 S. C., 529.

If, then, this paper must be regarded as a mortgage, which was not recorded until the 7th day of February, 1893, and if, as it is conceded, the defendant had no notice of it, either at the time when the Fort Motte Lumber and Shingle Company purchased the property in question from the plaintiff, and the same went into its possession, or at the time when the defendant acquired possession by the seizure thereof under its mortgage in December, 1892, it follows necessarily that the defendant has the superior right. By section 1776 of the General Statutes of 1882, now incorporated in the Revised Statutes of 1893, as section 1968, it is declared that "all mortgages, or instruments of writing in the nature of a mortgage, of any property, real or personal, * * * shall be valid, so as to affect the right of subsequent creditors or purchasers for valuable consideration without notice, only when recorded within forty days," &c., with a proviso in these words: "That the above mentioned deeds or instruments of writing, if recorded

subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration without notice only from the date of such record." And this court, in construing that section, in the case of *King* v. *Fraser*, 23 S. C., at page 569, held that a mortgage recorded after the time limited for that purpose had the same legal effect as if a new mortgage was given on the day of such record; and cites, with approval, the case of *Cameron* v. *Marvin*, 26 Kans., 622 (a case which we may say in passing is in principle very much like the case under consideration), where the same view is presented. So that whether we look to the dates of the two papers—the defendant's mortgage and the contract under which plaintiff claims, which we have held to operate as a mortgage, or to the dates at which these two papers were recorded—it is very obvious that the defendant has the prior lien, and, therefore, the superior right.

But while it is not disputed, and could not well be under the cases of *Moore* v. *Byrum*, 10 S. C., 452, *Parker* v. *Jacobs*, 14 S. C., 112, and *Hirshkind* v. *Israel*, 18 S. C., 157, that by a mortgage covering after acquired personal property, the mortgagee may obtain a lien upon such property after it is acquired by the mortgagor, it is earnestly contended by counsel for respondent that a mortgagee of after acquired property takes only a lien on the interest of the mortgagor, and if such property, when it is acquired, is subject to mortgages or other liens, the original mortgage does not displace such liens though they may be junior to it in point of time; and he cites in his argument several decisions of the Supreme Court of the United States to sustain his contention. But, as we understand it, the cases draw a distinction between a case where the mortgagor still retains possession of the acquired property, and a case where such property has passed into the possession of the original mortgagee, by a seizure under his mortgage. In the former, the mortgagee has only *an equity* to subject such property to the lien of his mortgage, which may be met and overcome by some superior equity, but in the latter the mortgagee acquired the *legal* title. It is observable that the cases cited from the Supreme Court of the United States were cases on the equity

side of the court, and it is noticeable that in one of them, *Fosdick* v. *Shall*, 99 U. S., at page 251, Waite, C. J., in delivering the opinion of the court, takes occasion to say that the possession of the receiver being that of the court, adds nothing to the previously existing title of the mortgagees, which seems to imply that if possession had been acquired by the mortgagees by seizure under their mortgage, the result would have been different, as in that case the mortgagees would have acquired the legal title.

It seems to us that the true rule is stated, and the proper distinction drawn, in the following quotation from *Parker* v. *Jacobs, supra:* "There can be no doubt that the rule *at law* is that it is necessary to the validity of the mortgage that the mortgagor should have a present property, either actual or potential, in the thing mortgaged (1 Jones Mort., § 140), but in equity the rule is different. As is said by Judge Story in *Mitchell* v. *Winslow*, 2 Story, 630, 'it seems to be the clear result of all the authorities that wherever the parties, by their contract, intended to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or not, or, if personal property, whether it is then *in esse* or not, it attaches, in equity, as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy.' This doctrine is fully established by the case of *Holroyd* v. *Marshall*, 10 H. L. Cas., 191, and is recognized in *McCaffery* v. *Woodin*, 65 N. Y., 459. We take it, therefore, that a mortgage on personal property, in which the mortgagor has no present interest, either actual or potential, is ineffectual to transfer the *legal* title to such property when subsequently acquired by the mortgagor, unless, when acquired, possession thereof is given to the mortgagee, or taken by him under the mortgage (*Moody* v. *Wright*, 13 Metc., 32, *Williams* v. *Briggs*, 11 R. I., 476, and many cases there cited), but that, in equity, such a mortgage is effectual to charge the property as soon as it is acquired by the mortgagor, and before possession is obtained by the mortgagee, with an equitable lien which will prevail against

a subsequent judgment or attaching creditor.  *Holroyd* v. *Marshall*, 10 H. L. Cas., 191; *Mitchell* v. *Winslow*, 2 Story, 630; *Smithurst* v. *Edmunds*, 14 N. J. Eq. (1 McCarter), 408; *McClaffrey* v. *Woodin*, 65 N. Y., 459."

Applying this doctrine to the case under consideration, it is clear that the defendant, by its mortgage, executed and duly recorded in August, 1892, acquired, at least, an equitable lien upon the property in question so soon as it was acquired by the mortgagor under the contract of 23d of September, 1892; but when the property was seized by the defendant, under its mortgage, on the 20th of December, 1892, and taken into its possession, the defendant thereby acquired the legal title, before any notice, either actual or constructive, of plaintiff's mortgage, and was, therefore, entitled to retain the possession thereof.

There is another view which leads to the same conclusion. If, as we have seen, the contract of the 23d of September, 1892, under which the Fort Motte Lumber and Shingle Company acquired possession of the property in dispute, must be regarded as a mortgage, or, at least, as an instrument in writing in the nature of a mortgage, then it follows, necessarily, that said company thereby acquired the *legal* title to said property, subject to the lien of plaintiff's then unrecorded mortgage; and when the defendant, by its seizure of said property under its mortgage, on the 20th of December, 1892, acquired the legal title, before any notice, either actual or constructive, of plaintiff's mortgage, the defendant may well be regarded as becoming *then* the purchaser, for it was *then* that defendant acquired the legal title; and this being subsequent to the lien under which plaintiff claims, the defendant is entitled to the protection secured to subsequent purchasers by the terms of the registry laws. In *Norwood* v. *Norwood*, 36 S. C., at page 343, Mr. Justice Pope, as the organ of the court, after discussing this subject, lays down the rule as follows: "This court, therefore, now announces that a secret mortgage, or a mortgage not recorded, is displaced in lien by a mortgage subsequently delivered and duly recorded, even if the debt secured by the recorded mortgage is an antecedent indebtedness."  The present case falls under this rule, thus clearly and

emphatically announced; for, of course, the same doctrine, under the express terms of the statute, would apply to a subsequent purchaser as well as to a subsequent creditor. It seems to us, therefore, that in any view which may be taken of this case, the decree below cannot stand.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.