QUATTLEBAUM v. TAYLOR.

1. CHATTEL MORTGAGE—NOTICE—RECORDING—CASE DISTINGUISHED. The instrument in this case construed to be "an instrument in the nature of a mortgage," and its record, under sec. 1968 of Rev. Stat., is constructive notice thereof to subsequent purchasers. *State* v. *Rice*, 43 S. C., 200, *distinguished*.

2. ESTOPPEL—EQUITY—CLAIM AND DELIVERY.—The doctrine of estoppel is equitable in its nature, and from the facts in this case the defendant is estopped from claiming the property.

Before TOWNSEND, J., Lexington, January, 1895. Reversed.

Action in claim and delivery in court of Trial Justice J.

A. Muller by W. E. Quattlebaum against Jasper Taylor. The following is the decree of the trial justice:

This is an action of claim and delivery, brought by the plaintiff against the defendant for the recovery of a certain iron gray mare mule, named Beck, about eleven years old; and the facts, as appears from the testimony taken at the trial on the 31st day of October, are as follows:

1. On the 14th day of March, 1892, the defendant sold the mule in question to one James A. Caughman, for the sum of $125, on a credit, and on the same day James A. Caughman gave defendant his note, under seal, for the amount of purchase money, payable on the 15th day of October, 1892, with interest from date; and, on the same day, in order to secure the payment of said note, James A. Caughman gave the defendant a bill of sale over the mule, and on the 15th day of March, 1892, the defendant filed the same in the clerk of court's office for this county. In the latter part of October, 1892, James A. Caughman traded the mule, on a Saturday, to one J. E. B. McCartha, for a mare. Both the defendant and Caughman testify that, before the trade was made, Caughman went to the defendant and asked permission, which was given, defendant saying, "I don't care what you do with the mule just so I get my money." On the day following the trade, Sunday, McCartha heard that Taylor had a mortgage or bill of sale over the mule, and on the next morning, Monday, McCartha wrote to Caughman in reference to the matter, but the party he sent did not find Caughman, owing to the fact he had gone to Columbia. McCartha, learning that Caughman would return on that day's train from Columbia, went to Lewiedale, where Caughman was to get off, in order to see him upon his return. When McCartha got to Lewiedale he found the defendant there, and tells him what he had heard, and asked if it was true, to which the defendant, laughing, replied that he had a bill of sale, but had told Caughman he could trade the mule. All he wanted was his money for it, and if he, McCartha, had the mule, to keep

it. McCartha, not being satisfied, waits for Caughman, and when he returns, asks him about the matter, to which Caughman replied in the affirmative, but stated that Taylor had given him permission to trade the mule. McCartha, still seeming dissatisfied, asked Caughman to go with him up to S. P. Drafts' store, in the town of Lewiedale, and they together find Taylor and call him out, and in the presence of a negro, named William Jefcoats, who testified in the case, asked Taylor about the matter. At this conversation McCartha, Caughman, and the negro, Jefcoats, swore that Taylor gave Caughman permission to trade, without reserving any rights in himself to any claim over the property under his bill of sale. Taylor, upon the other hand, says he only gave consent to trade upon condition that Caughman paid him for the mule. At this the parties separated, McCartha taking the mule and Caughman the mare. McCartha stated that had Taylor said he would hold his interest in the mule until he received payment from Caughman, he would have rued back and not have taken the mule away from Lewiedale that evening; Taylor holding on to the proposition that he would not have consented to the trade without the understanding that he was to be paid, and that it was not his intention, in giving this consent for the trade, that he was to release his interest under the bill of sale until he was paid in full. The testimony upon this point is very conflicting, and while both parties seem to be honest in their statements, then there certainly was a misunderstanding between them in relation to the matter; and their minds having failed to come together sufficiently to form a contract as in law would bind Taylor, I do not consider that Taylor surrendered his right over the property simply by the consent to trade, and to Caughman and McCartha at Lewiedale after the trade; and if this matter was being adjusted between McCartha and Taylor, I would not hesitate to find that McCartha took the mule subject to bill of sale of Taylor. Before I go further I will state that it appears from the testimony that, after the trade

was made, Caughman made several payments upon his note, as follows: January 2d, 1893, $10; February 28th, 1893, $25; May 1 (no year), $20; November 13 (no year), $9. This is all that has been paid upon the indebtedness.

3. It appears that Taylor allowed McCartha to hold the mule and exercise all the rights of ownership over him from the time of the trade, in the latter part of October, 1892, and after the note was due, until he seized the same on the 24th day of October, 1894, two years; even allowing him, tacitly, to sell the mule to one Frank Aldrich, who kept it about one year, when he returned it to McCartha because he could not pay for it, and only one time during this period did defendant say anything to McCartha about the matter, which was eight or nine months after the trade, when Taylor went to see McCartha, and he and McCartha went to see Caughman about his (Caughman) paying for it, and at which time, as all the witnesses, both for plaintiff and defendant, say, Caughman asked Taylor to wait on him a little longer, and he would try to pay the note; to which Taylor consented. McCartha stated that Taylor during this entire time never demanded possession of the mule, and Taylor does not deny this statement; and the only testimony going to show that Taylor claimed any interest in the mule is, that Taylor and his son, Fred, who testified, say, at the time Taylor and McCartha went to see Caughman about the payment, Taylor told McCartha not to trade the mule until he got his money out of Caughman; this statement McCartha positively denies.

4. In June, 1894, McCartha sold this mule to the plaintiff in this action, for a valid consideration, and says nothing to him about the Taylor bill of sale, and plaintiff knows nothing about it until the 24th day of October, 1894, when the defendant goes personally and seizes the mule, then in plaintiff's possession, under his bill of sale; whereupon plaintiff commences this action. Counsel for the defendant advanced the position, that the filing of the bill of sale, by defendant in March, 1892, was constructive notice to the

plaintiff, and that he is bound by it under the law. I can see where this position would be a good one, and should prevail if the plaintiff had purchased from Caughman, the mortgagor, but the law certainly does not require the purchaser of personal property to trace title back further than that of the person in whose hands he finds it, and the plaintiff, not knowing anything about the interest which Caughman held once in the property, he is not expected to search the records, except in so far as McCartha's interests, from whom he purchased, are affected. I am, therefore, compelled to find, that the plaintiff in this action is an innocent purchaser for value without notice.

5. But even if this was not the case, and the position of counsel for the defendant was tenable, under the authorities cited by the plaintiff's counsel, to wit: *Dunlap* v. *Goodwin*, 22 S. C.; 549; *Hand* v. *R. R. Co.*, 12 S. C., 250; *Jones* v. *Hudson*, 23 S. C., and the late case of *Summer* v. *Kelly*, 38 S. C., I would be compelled to hold, according to the facts as developed in this case, that the defendant is estopped from setting up any interests which he might have had under his bill of sale against the rights of the plaintiff herein. In the case of *Summer* v. *Kelly*, 38 S. C., the Court says: * * * "in the case of chattels of personal property, the condition being broken, works a forfeiture, and, as forfeitures are not protected or favored in law, any act of the mortgagor, *either voluntary postponement* of the security or any act of his whereby he shows his election to accept the payment of his debt intended to be secured by the mortgage, *is made to operate as discharging the mortgage*, and as revesting the title in the chattel in the mortgagor.

It will be seen that the leading authors on the subject of chattel mortgages all maintain this position. Mr. Herman, in his work on Chattel Mortgages, at page 483, says: "Thus a *demand* of the *amount due* on the note *after* it *becomes payable*, is a *waiver* of the forfeiture of the mortgaged property, and the *acceptance* of a *part* payment or payments in

full, *after the time for payment has expired*, is a *waiver* of the forfeiture under the mortgage."

The facts in this case before me show, beyond all controversy, that the trade between Caughman and McCartha was made after the note became due and payable. Taylor received and credited upon the note all payments that were made, which were in 1893, and, perhaps, as late as 1894; Taylor constantly demanded payment of Caughman even as late as October, 1894, just before he seized the mule while in the hands of plaintiff; not only this, but allows McCartha to hold the mule from the last of October, 1892, and exercise publicly all the rights of ownership by working and making a crop in 1893 with it, selling to Aldrich and taking it back, and again selling to plaintiff in June, 1894; and not even then does he look after any interest which he might have had until October, 1894, when he takes the mule from plaintiff.

It is, therefore, ordered and adjudged, that the plaintiff do recover the mule mentioned and described herein from the defendant, and in the event that the same cannot be had, then the sum of $75, the value thereof, together with the costs of this action.

The following is the bill of sale referred to: The State of South Carolina, County of Lexington. Know all men by these presents, that I, James A. Caughman, of the said county, in consideration of the sum of $125 to me advanced in one grey mare mule, named Beck, by Jasper Taylor, of Lexington County, said State, have bargained and sold unto the said Jasper Taylor the following personal property: one iron grey mare mule, named Beck, and about nine years old, now in my possession, and which I promise to deliver on demand of the said Jasper Taylor. In witness whereof, I have hereunto set my hand and seal, this the 14th of March, A. D. 1892. J. A. Caughman. [L. S.] W. T. Johns, D. J. Griffith. Recorded in book 5, p. 416, March 15, 1892.

From the above decree the defendant appeals, and the

Circuit Court sustains the appeal.    From  the decision of
the Circuit Court the plaintiff appeals.

  *Mr. G. T. Graham*, for appellant.

  *Mr. J. Brooks Wingard*, contra.

  Jan. 3, 1896.  The opinion of the Court was delivered by
MR. JUSTICE GARY.  The facts connected with this case
will appear by reference to the judgment of the trial justice
and the instrument of writing marked exhibit "B."

  In considering  the appellant's exceptions, we will adopt
the arrangement of respondent's attorney as to the questions
arising under them, as follows:

  1. "Is the plaintiff herein an innocent purchaser for value
without notice?"

  2. "Is the defendant herein estopped from  claiming  the
lien of his bill of sale on the chattel, the purchase money
of which it was given to secure?"

  3. "Is the bill of sale herein a chattel mortgage?"

  The instrument in writing set out in the case as exhibit
"B" is very similar to that in the case of the *State* v. *Rice*,
43 S. C., 200.    There is, however, a difference, which we
think takes it out of the rule laid down in that case,
to wit: that the sum "advanced" was alleged to be
in a mule which was thereafter alleged to have been
sold to the person making the so-called "advancement."
This paper must be regarded as "an instrument in writing
in the nature of a mortgage," the record of which, under
section 1968, was constructive notice to subsequent pur-
chasers of the property therein mentioned.    As the plain-
tiff must be presumed to have had notice of the said
instrument of writing, he cannot be regarded as a purchaser
for valuable consideration without notice.    This disposes
of numbers 1 and 3 of the arrangement aforesaid.

  The defense of estoppel is *equitable* in its nature, and the
facts relative to it may be reviewed by this Court.    After

careful consideration, this Court is of the opinion that the Circuit Judge was in error in not holding that the defendant was estopped from claiming said property.

It is the judgment of this Court, that the order of the Circuit Court be reversed.