10233

### HILL v. WINNSBORO GRANITE CORPORATION *ET AL.*

#### (99 S. E. 836.)

1. CHATTEL MORTGAGES—NATURE OF TRANSACTION—SALES AGREEMENT.—Agreement whereby seller agreed to sell and transfer to buyer tools and other equipment, "title to remain in the hands of" seller "until purchase price is paid in full when same will be turned over to" buyer, *held* a mortgage or an instrument in the nature of a mortgage with the incidents of a mortgage, and not a conditional sale.

2. CHATTEL MORTGAGES—LEGAL TITLE—POSSESSION OF PROPERTY—RIGHTS OF MORTGAGEE.—Generally, the execution of a chattel mortgage vests the legal title in the mortgagee and gives him the right to the possession of the property, unless there are circumstances indicating that such was not the intention of the parties.

3. CHATTEL MORTGAGES — POSSESSION OF PROPERTY — PRESUMPTION.—If mortgagor is given possession at time of execution of mortgage, it will be presumed that the parties intended that he should retain it until the condition broken.

4. CHATTEL MORTGAGES—RIGHT OF POSSESSION—SALE BY MORTGAGOR—RIGHT OF MORTGAGEE.—Mortgagor's right to possession until condition broken is personal to mortgagor, and may be forfeited by his sale of property or other disposition of its possession, whereupon mortgagee may retake possession wherever he may find property.

5. CHATTEL MORTGAGES—DUTY OF MORTGAGOR—FIDUCIARY RELATION.—
Mortgagor in possession of mortgaged property occupies a fiduciary
relation to the property and is required to so act as not to impair
rights of mortgagee.

6. CHATTEL MORTGAGES.—REMOVAL OF PROPERTY FROM STATE—SECU-
RITY.—Mortgagor will not be permitted to remove property beyond
limits of State unless he gives ample security to protect rights of
mortgagee, such removal impairing mortgagee's rights and being
against policy of the law, in view of Cr. Code 1912, sec. 447.

7. CHATTEL MORTGAGES—SUFFICIENCY OF TENDER.—Tender by mort-
gagor before maturity of indebtedness and without including.
expenses of mortgagee in seizing the property upon mortgagor's
attempt to remove property to another State *held* insufficient.

Before PRINCE, J., Fairfield, Spring term, 1918.
Reversed.

*Messrs. McDonald & McDonald,* for appellant, submit:
*Is the contract of sale in this case to be construed as a con-
ditional sale or as a chattel mortgage?* 6 Am. & En. Enc. of
Law, p. 453; Harper's Law 391; 16 (S. C. L. 391); Rice's
Law 421; 24 S. C. L. 421; 14 S. C. 522; 18 S. C. 446; 21
S. C. 212; 27 S. C. 624; 43 S. C. 39. *But, assuming for the
purpose of argument, that the agreement between the plain-
tiff and the defendant, Winnsboro Granite Corporation, is
to be construed as a mortgage, still the defendant had a right
to seize the property:* 105 S. C. 137; 5 S. C. L. (3 Brev.)
68; S. C. Eq. (1 McCord Eq.) 486; 20 S. C. L. (2 Speers)
181; 31 S. C. L. (2 Rich.) 80; 5 A. & En. L. 985; 29 S. C.
L. (2 Speers) 181; 5 S. C. L. (2 Strob. L.) 457; 23 S. C.
282; 32 S. C. L. (1 Strob.) 121; 5 R. C. L., p. 438; 18 Am.
Dec. 558 (note); 96 S. E. R. (S. C.) 541. *The tender in
this case was insufficient, in that respondent not only failed
to tender costs of seizure, but the company was holding
granite which respondent had not paid for:* 108 S. C. 206.

*Messrs. J. W. Hanahan* and *G. W. Ragsdale,* for respond-
ent, submit: *The paper in this case was a chattel mortgage,
and that defendant had no right to seize the property, the
condition therein not being broken as the debt evidenced by*

*the note was not due at the time of the seizure:* 1 Benjamin
on Sales (6th American Edition), pp. 358-421 ; 35 Cyc., p.
661; 40 S. C. 529; 43 S. C. 39; 21 S. C. 212; 19 S. C. 445; .
14 S. C. 522; 27 S. C. 624; 74 S. C. 452; 35 S. C. 512; 35
S. C. 578; 40 S. C. 531 and 533. *But if the instrument of
writing in this could be construed as a conditional sale it
would not avail appellant. Surely a conditional sale may
not be arbitrarily rescinded or abrogated at the caprice of
the seller and before any breach of condition. The statute
provides for the taking of property where the debt is not
due and the debtor about to depart from the State:* Civil
Code 1912, sec. 230, subsec. 5 and sec. 288. *Heyward,
appellant's agent, wilfully and knowingly took this property
before the mortgage was due, or the note which was a part
of the mortgage was due—that in itself should carry the case
to the jury on punitive damages—he was a trespasser—"a
trespasser, though, acting in honest belief of his rights, may
so grossly and negligently assert his rights that his acts will
be regarded as a wilful and reckless invasion of the rights
of the real owner."* 69 S. C. 160; 88 S. C. 70; 91 S. C. 486;
98 S. C. 89.

July 14, 1919.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This is an action in claim and delivery and for actual and
punitive damages, for the alleged wrongful seizure of cer-
tain personal property.

The third paragraph of the complaint is as follows:

"That on the 24th day of September, 1915, the plaintiff
intended to ship said property to Elberton, in the State of
Georgia, had loaded a large part of the same onto a car
belonging to the Southern Railway Company, and was
engaged in loading said car for shipment when the defend-
ant, the Winnsboro Granite Corporation, through its offi-
cers, agents and servants and the defendant, B. H. Heyward.

wilfully, wantonly, recklessly and maliciously, and with a high hand, regardless of the rights of the plaintiff, unlawfully, wrongfully took possession of said property and now has the same in their possession although they had no right to so do, and after having unlawfully and wrongfully taken and seizing the property of the plaintiff as aforesaid, the defendants removed the said personal property from the station of Rockton, on the Southern Railway, where it was being loaded for shipment, to its quarry at Rion, several miles away and now keeps the said property wrongfully and unlawfully from this plaintiff and refuses to deliver the same to him."

The defendant alleged that it seized the property, under the following instrument of writing, which was signed by the plaintiff and the defendant, Winnsboro Granite Corporation:

"Rion, S. C., January 1, 1915. In consideration of the sum of five hundred seventy-five dollars ($575.00), payable as follows: Cash, $34.00. Two W. O. W. jobs 'B' design, $66.00. Balance to be paid as Mr. Hill ships out his work, he to pay Winnsboro Corporation 10% (ten per cent.) of the contract price of the work; he to pay interest at 8% on the standing balance. The Winnsboro Granite Corporation agrees to sell and transfer to I. B. Hill the land, shed, tools and other equipment formerly owned by R. L. Beauchamp & Company, and viewed this day by R. L. Beauchamp, I. B. Hill and R. C. Brockington. Title to the property to remain in the hands of the Winnsboro Granite Corporation until purchase price is paid in full, when same will be turned over to I. B. Hill."

The defendant also alleged that it seized the property by reason of the fact that the plaintiff had caused it to be taken from Rion to Rockton and placed on board certain cars, for shipment beyond the limits of the State.

The jury rendered the following verdict:

"We find for·plaintiff the property in dispute; the sum of fifty dollars actual damages, and the sum of seven hundred and fifty dollars punitive damages; and as a special verdict we find that plaintiff is due defendant, Winnsboro Corporation, two hundred and eighty-three and 86-1ᴦ0 dollars on the mortgage debt."

The defendants appealed, and the first exᴄₑₚtion is as follows:

"(1) That his Honor erred in his charge to the jury, in construing the agreement of sale introduced in evidence (Exhibit A) to be a chattel mortgage, and not a conditional sale, and that under said paper the defendants had no right to seize the property covered by same; the error being that under said agreement the defendant, Winnsboro Granite Corporation, retained the title to said property, and had the right to seize it upon the plaintiff attempting to remove it from the State under circumstances indicating to the minds of the defendants an attempt to fraudulently evade the.payment of the purchase price."

The following· authorities show that the instrument of writing is a mortgage or an instrument of writing in the nature of a mortgage with the incidents of a mortgage:

Talmadge v. Oliver, 14 S. C. 522; Straub v. Screven, 19 S. C. 445; Herring v. Cannon, 21 S. C. 212, 53 Am. Rep. 661; Talbott v. Sandifer, 27 S. C. 624, 4 S. E. 152; Munroe v. Williams, 35 S. C. 572, 15 S. E. 279; Singer Co. v. Smith, 40 S. C. 529, 19 S. E. 132, 42 Am. St. Rep. 897; Perkins v. Bank, 43 S. C. 39, 20 S. E. 759; Quattlebaum v. Taylor, 45 S. C. 512, 23 S. E. 617; State v. Haynes, 74 S. C. 450, 55 S. E. 118.

The next question for consideration is whether there was error, on the part of his Honor, the presiding Judge, in ruling that the mortgagee did not have the right to seize the property.

At the time of the seizure, the indebtedness secured by the mortgage had not become due.

As a general proposition, the execution of a mortgage vests the legal title to the property in the mortgagee; and, likewise, gives him the right to the possession of the property, unless there are circumstances indicating that such was not the intention of the parties. If at the time the mortgage is given, the possession of the property is delivered to the mortgagor, there is a presumption that it was the intention of the parties that he should retain possession until condition broken. This right to the possession of the property until condition broken, is personal to the mortgagor, and may be forfeited by him, if he should sell the property or otherwise dispose of its possession. In such case, the mortgagee may retake possession of it, wherever he may find it.

The plaintiff occupied a fiduciary relation to the property, and it was his duty to act in such a manner as not to impair the rights of the mortgagee.

If the plaintiff had instituted a judicial proceeding for the purpose of getting the consent of the Court to a removal of the property beyond the limits of the State, the Court, in no event, would have allowed the removal, unless he gave ample security to protect the rights of the mortgagee.

Not only does a removal of mortgaged property beyond the limits of the State impair the mortgagee's rights, but it is against the policy of the law.

Section 447 of the Criminal Code provides that "Any person or persons who shall sell or dispose of any personal property on which any mortgage or other lien exists, without the written consent of the mortgagee or lienee, * * * shall be guilty of a misdemeanor. * * *"

This statute was construed with reference to the removal of property beyond the limits of the State in the cases of *State v. Rice*, 43 S. C. 200, 20 S. E. 986, and *State v.*

*Haynes,* 74 S. C. 450, 55 S. E. 118.   In the last mentioned
case it was held: "That removal of property from the juris-
diction of the State with the purpose *or necessary effect
of defeating the mortgage lien,* is such a disposal of prop-
erty, as falls within the meaning of the statute."   (Italics
added.)

It is true this is not a criminal case, but we have cited
these cases for the purpose of showing that the policy of
the law is against the removal of mortgaged property beyond
the jurisdiction of the State.   The necessary effect of such
a removal is to increase the opportunities of the mortgagor
to defeat the lien.   Furthermore, if it should become neces-
sary for the mortgagee to resort to the remedies provided by
law for the enforcement of his rights, they would be
impaired by reason of the necessity of resorting to another
jurisdiction.   If it was the intention of the plaintiff to make
his permanent home in Georgia, our conclusion is that he
did not have the right to remove the property without the
consent of the mortgagee.

The plaintiff made a tender, after the property had been
taken back to Rion by the mortgagee, but the amount due
under the mortgage was not then due, and the note
was in Charleston, and for that reason the tender
was declined.   It was insufficient for the further rea-
son that it did not include the expenses of seizing the prop-
erty.

Reversed.