THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ex Parte:
 Protective Life
 Insurance Company, Respondent,
 v.
 Oakdale
 Investors, LP, Webb Properties, Inc., and J. Patton Webb, Appellants,
 ___________________
 In Re: 
 Marin
 Properties, LLC, Plaintiff,
 v.
 Oakdale
 Investors, LP, Central Bank of the South, Protective Life Insurance Company,
 and the State Street Bank and Trust Company, Defendants,
 and
 Protective Life
 Insurance Company and State Street Bank and Trust Company, Third-Party
 Plaintiffs, 
 v.
 Fletcher Bright
 Company, County of Spartanburg, Jean R. Jameson, in her official capacity as
 Delinquent Tax Collector for the County of Spartanburg, Webb Properties,
 Inc., HDC Corporation, J. Patton Webb, Thomas L. Hoofnagle, and ATFH Real
 Property, LLC, Third-Party
 Defendants.
 
 
 

Appeal From Spartanburg County
 Gordon G. Cooper, Master-In-Equity

Unpublished Opinion No. 2008-UP-066
Submitted January 2, 2008  Filed January
22, 2008

AFFIRMED AS MODIFIED

 
 
 J. Stephen Welch, of Greenwood, and John S. Nichols, of Columbia, for Appellants.
 J. Richard Kelly, of Greenville, for Respondent.
 
 

PER CURIAM:  In this
 foreclosure action by a mortgage lender against a borrower and its general
 partners, Protective Life Insurance Company seeks to recover deficiency
 judgments against the borrowers individual general partners under exceptions
 to the contractual nonrecourse provision.  We affirm as modified.[1]  
FACTS

Oakdale
 Investors, L.P. (Oakdale), is a South Carolina limited partnership whose
 general partners were Webb Properties, Inc. (Webb Properties); HDC Corporation;
 J. Patton Webb; and Thomas L. Hoofnagle (collectively Oakdale and its general
 partners).  On July 22, 1994, Oakdale executed a promissory note for
 $3,725,000.00 payable to Protective Life Insurance Company (Protective) and a
 mortgage and security agreement granting Protective a security interest in
 Oakdales real property known as the Oakdale Shopping Center (the Shopping
 Center).  Oakdale assigned Protective the Shopping Centers rents and leases.  
The
 promissory note included a nonrecourse provision preserving Oakdale and its general
 partners from personal liability for the payment of the principal, interest,
 prepayment fee or Premium, if any.  However, Oakdale and its individual general
 partners could incur personal liability for Lenders damage, loss, liability,
 costs and expenses, plus interest, in five circumstances.  Paragraph 4 of the
 promissory note enumerated those circumstances, including (a) failure by
 Borrower to perform the other obligations contained in the Loan Documents
 including, but not limited to, the obligations to . . . pay ad valorem taxes
 and assessments and (b) fraud or misrepresentation by Borrower (or any
 general partner) to Lender prior to or during the term of this Note.  
The
 Shopping Center property generated rental income sufficient to pay ordinary
 expenses, including property taxes.  Spartanburg County notified Oakdale of the
 2002 ad valorem taxes it levied on the Shopping Center.  Webb personally
 received this notice on behalf of Oakdale, but he failed to pay the taxes.  Spartanburg County notified Oakdale the Shopping Center would be sold at a tax sale.  Webb
 personally received this notice as well but failed to notify Protective of the
 tax delinquency or the tax sale.  
Subsequently,
 Spartanburg County sold the Shopping Center to Marin Properties, LLC, and
 notified Oakdale it could redeem the property during a twelve-month redemption
 period.  Webb received this notice on behalf of Oakdale but failed to notify
 Protective of the redemption period.  Oakdale did not redeem the property
 within the redemption period.  
On
 March 29, 2005, Marin recorded a tax deed for the Shopping Center.  Marins bid
 exceeded the tax debt on the property by $883,729.50 (the Overbid Funds).  Webb
 applied to Spartanburg County for the Overbid Funds and deposited them in
 Oakdales checking account.  Later, Webb personally attempted to repurchase the
 Shopping Center directly from Marin, using personal rather than partnership
 funds.  Although Marin sent Webb a contract naming Webb Properties and not
 Oakdale as the purchaser, Webb never executed the contract because he believed
 Marins price was too high and he was uncomfortable with the contract itself.  
Marin
 deeded the Shopping Center to ATFH Real Property, LLC (ATFH).  One month later,
 Marin filed an action to quiet title to the Shopping Center.  Protective
 responded and asserted its claims under the promissory note.  The circuit court
 referred Marins suit to the master for hearing and adjudication.  In response
 to a motion by Protective, the master appointed a receiver for the property.  The
 receiver took control of the Overbid Funds as well as the Shopping Centers
 income.  Due to Oakdales failure to make scheduled payments, Protective
 invoked the promissory notes acceleration provision against Oakdale.  
The
 master set aside the tax sale due to defective notice.  Under a negotiated
 agreement, the receiver disbursed the Overbid Funds to ATFH, and Marin and ATFH
 executed quitclaim deeds to Oakdale.  With the tax sale issue resolved, the
 master dismissed from the suit all parties except Protective, Oakdale, and
 Oakdales general partners.  
On
 September 15, 2006, the master entered judgment on the foreclosure action to
 Protective and awarded Protective $3,727,460.98, plus interest, from Oakdale.  The
 master ordered the property sold at auction, with the proceeds to be applied to
 Oakdales entire debt.  The master found Oakdales failure to pay ad valorem
 taxes on the property triggered an exception to the promissory notes
 nonrecourse provision.  Further, the master found $346,648.27 (the Tax Issue
 Loss) of the grand total was attributable to Protectives efforts to resolve
 the issues stemming from Oakdales failure to pay taxes timely.  As a result,
 the master found joint and several liability among Oakdale and all its general
 partners in an amount up to $346,648.27 for Protectives losses as a result of
 Oakdales nonpayment of property taxes.  The master ruled Protective was
 entitled to a deficiency judgment against the individual partners, jointly and
 severally, for any portion of the Tax Issue Loss that remained unpaid after
 sale of the property.  Moreover, the master found Webbs pursuit of the overbid
 funds and a contract of sale with ATFH constituted fraud.  As a result of the
 fraud, the master found Protective entitled to a deficiency judgment against
 Oakdale and each of its partners, jointly and severally, for both the Tax Issue
 Losses and all sums owed under the terms of the note that remained unpaid after
 sale of the property.  This appeal followed.
STANDARD OF REVIEW
Actions
 for foreclosure are actions in equity.  Wilder Corp. v. Wilke, 324 S.C.
 570, 576-77, 479 S.E.2d 510, 513 (1996).  In an
 appeal from the final judgment of a master, the reviewing court applies the
 same scope of review as if the appeal were from the circuit court without a
 jury to the Supreme Court.  See Tiger, Inc. v. Fisher Agro, Inc.,
 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1990) (Our scope of review for a
 case heard by a Master-in-Equity who enters a final judgment is the same as
 that for review of a case heard by a circuit court without a jury.); Wigfall
 v. Fobbs, 295 S.C. 59, 60-61, 367 S.E.2d 156, 157 (1988) (applying the
 standard of review from a law case heard by the circuit court to a law case
 heard by the master).  In an action in equity, tried by a master without a
 jury, an appellate court may view the evidence to determine facts in accordance
 with its own view of the preponderance of the evidence.  Tiger, 301 S.C.
 at 237, 391 S.E.2d at 543.
LAW/ANALYSIS

Oakdale,
 Webb Properties, and Webb argue that the master erred in finding joint and
 several liability on the basis of fraud.  We disagree.  
I. Fraud 
As a
 preliminary matter, we find that our review of this issue is governed by the
 equitable standard enunciated above rather than by a legal standard triggered
 by fraud.  We recognize that, when legal and equitable actions are maintained in one suit, each retains its own identity as legal
 or equitable for purposes of the applicable standard of
 review on appeal.  Corley v. Ott, 326 S.C. 89, 92, 485 S.E.2d 97,
 99 (1997).[2] 
 In determining whether a cause of action is at law or in equity:

 [T]he
 appellate court must look to the essential character of the cause of action
 alleged by the petitioners in the court below.  If the essential character of
 the petitioners cause of action is grounded on equitable rights and equitable
 relief is sought, the case is regarded as equitable and the appellate court has
 jurisdiction to make findings in accordance with its own view of the
 preponderance of the evidence.  

Dean v. Kilgore, 313 S.C. 257, 259, 437 S.E.2d 154, 155 (Ct. App.
 1993).  However, in the case at bar, the fraud asserted is not an action at
 law.  Protective asserted fraud by Oakdale and its general partners, not as a
 separate cause of action arising out of a common event, but as a means of
 invoking one of the contractual exceptions to the promissory notes nonrecourse
 provision.  The essential nature of this action is equitable.  The assertion of
 fraud here is inextricably part of the equitable claim for foreclosure. 
 Therefore, we will determine facts in accordance with our view of the
 preponderance of the evidence.  Tiger, 301 S.C. at 237, 391 S.E.2d at
 543.  Having decided the action is one in equity, we now turn to examine
 whether the master erred in concluding Oakdale committed fraud.  
Oakdale
 and its general partners had a fiduciary duty to disclose to Protective any
 known threats to Protectives interest in the Shopping Center.  In South Carolina, a party to a transaction may assume a duty to disclose in three ways:  

 First,
 where it arises from a pre-existing definite fiduciary relation between the
 parties; second where one party expressly reposes a trust and confidence in the
 other with reference to the particular transaction in question, or else from
 the circumstances of the case, the nature of their dealings, or their position
 towards each other, such a trust and confidence in the particular case is
 necessarily implied.  The third class includes those instances where the very
 contract or transaction itself, in its essential nature, is intrinsically
 fiduciary, and necessarily calls for perfect good faith and full disclosure,
 without regard to any particular intention of the parties.  

Holly Hill Lumber Co.,
 Inc. v. McCoy, 201 S.C. 427, 437, 23
 S.E.2d 372, 376 (1942).  The party acting as a fiduciary must have either
 induced or actually accepted the other partys trust.  Moore v. Moore,
 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct. App. 2004) (citing Regions Bank
 v. Schmauch, 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct. App. 2003)).  A mortgagor
 in possession of mortgaged property occupies a fiduciary relation to the
 property and is required to act in a manner that will not impair the rights of his
 mortgagee.  Hill v. Winnsboro Granite Corp., 112 S.C. 243, 248, 99 S.E.
 836, 838 (1919).  
Here,
 Oakdale, through its general partners, executed a mortgage, promissory note,
 and security agreement granting Protective an interest in the Shopping Center,
 as well as an assignment of rents and leases.  By executing these documents and
 retaining possession of the Shopping Center, Oakdale and its general partners
 manifested their acceptance of Protectives trust and, consequently, acceptance
 of their fiduciary obligations to Protective.  Oakdale and its general partners
 signified they promised not to impair Protectives rights to the Shopping
 Center and assumed the duty to disclose to Protective any threats to its
 interest in the property.  
Additionally,
 Oakdale fraudulently concealed from Protective known threats to Protectives
 interest in the property.  When a party to a transaction conceals some fact
 which is material, which is within his own knowledge, and which it is his duty
 to disclose, he is guilty of actual fraud.  Holly Hill Lumber, 201 S.C.
 at 436, 23 S.E.2d at 376.  Webb admitted he personally knew about Oakdales
 failure to pay ad valorem taxes on the property, the tax sale of the property, and
 the redemption period that followed the tax sale.  Webb further admitted he did
 not notify Protective or its agent of any of these matters.  Oakdale and its
 general partners had a duty to disclose to Protective threats against its interest
 in the Shopping Center.  Because Webb knew about these threats, Webbs failure
 disclose them to Protective constitutes fraud.  We therefore find Oakdale
 committed actual fraud against Protective, triggering Paragraph 4(b) of the promissory
 note.  
However,
 we disagree with the masters award of a deficiency judgment for fraud both in
 the amount of the Tax Issue Losses and in the amount of all other sums owed
 Protective under the terms of the Note.  Paragraph 4(b), upon which liability
 here is premised, does not obviate the nonrecourse provision entirely.  Rather,
 it provides a limited exception to the rule against personal liability.  The
 limited exception encompasses Lenders damage, loss, liability, costs and
 expenses, along with interest.  It does not expose Oakdales partners to
 personal liability for the principal, interest, prepayment fee or Premium, if
 any, under the note.  Therefore, we find Oakdale and its general partners have
 joint and several personal liability for the costs Protective incurred to
 protect its rights, plus interest, but not for the principal amounts due under
 the note.  
II. Additional
 Sustaining Grounds
Protective
 urges us to affirm the masters judgment on additional sustaining grounds.[3] 
 We affirm the masters judgment of joint and several liability based upon Oakdales
 failure to pay ad valorem taxes on the property.  Paragraph 4(a) of the note
 extends joint and several liability to Oakdales general partners for failure
 . . . to . . . pay ad valorem taxes and assessments with respect to the
 Property.  Personal liability under Paragraph 4(a) is the same limited
 liability as under Paragraph 4(b).  Webb admitted to failing to pay these
 taxes, and the master found personal, joint and several liability for the Tax
 Issue Loss on this basis.  Therefore, under Paragraph 4(a) of the note, Oakdale
 and its general partners incurred joint and several personal liability for the
 Tax Issue Loss, plus interest, by failing to pay ad valorem taxes on the
 Shopping Center.  
CONCLUSION
The
 master did not err in finding Oakdale and its general partners personally
 liable, both jointly and severally, to Protective under exceptions to the
 nonrecourse provision in the note.  However, their personal liability extends
 only to the amount of the Tax Issue Loss, plus interest.  A preponderance of
 the evidence supports the masters findings that Oakdale had a fiduciary duty
 to notify Protective of known threats to Protectives interest in the Shopping
 Center, Oakdale knew the Spartanburg County Tax Collector intended to sell the
 property at a tax sale, and Oakdale fraudulently failed or refused to inform
 Protective its interest in the property was in jeopardy.  Additionally, we find
 Oakdale and its general partners incurred joint and several personal liability
 under the note for Protectives Tax Issue Loss, plus interest, by failing to
 pay ad valorem taxes levied on the property.  Accordingly, the order of the
 master is 
AFFIRMED
 AS MODIFIED.
HUFF
 AND PIEPER, JJ., AND CURETON, AJ., CONCUR.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.

[2] Where legal and equitable actions co-exist in the
 same suit, the proper analysis is to view the actions separately for the
 purpose of determining the appropriate standard of review.  Jordan v. Holt, 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005).  An action for
 fraud is an action at law, and a legal question in an equity case receives
 review as in law.  Gunter v. Fallaw, 78 S.C. 457, 59 S.E. 70 (1907).  An
 appellate courts scope of review in cases of fraud, where the proof must be by
 clear, cogent and convincing evidence, is limited to determining whether there
 is any evidence reasonably supporting the circuit courts findings.  Kiriakides
 v. Atlas Food Sys. & Servs., Inc., 343 S.C. 587, 594, 541 S.E.2d 257,
 261 (2001).
[3] Under the present rules, a respondent - the winner
 in the lower court - may raise on appeal any additional reasons the appellate
 court should affirm the lower courts ruling, regardless of whether those
 reasons have been presented to or ruled on by the lower court.  IOn,
 L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 419, 526 S.E.2d 716, 723
 (2000).  Similarly, a respondents failure to raise an additional sustaining
 ground in its appellate brief constitutes abandonment of that ground.  Id.  However, the basis for a respondents additional sustaining grounds must appear
 in the record on appeal.  Id.